**Roland BRADLEY and Ernesteen Bradley, Plaintiffs,**

v.

**JOHN M. BRABHAM AGENCY, INC., Defendant.**

No. 75–287.

United States District Court,
D. South Carolina,
Columbia Division.

June 23, 1978.

28

Herbert E. Buhl, III, Columbia, S. C., Allan R. Holmes, Piedmont Legal Serv., Spartanburg, S. C., for plaintiffs.

Henry W. Kirkland, Columbia, S. C., M. M. Weinberg, Sumter, S. C., for defendant.

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

CHAPMAN, District Judge.

This matter was tried in Columbia, South Carolina on June 12, 1978 without a jury. The suit is brought under Title VIII of the

Civil Rights Act of 1968, 42 U.S.C. § 3601 et seq. and also under 42 U.S.C. § 1982.

The plaintiffs are husband and wife and at the times mentioned in the complaint plaintiff Roland Bradley was a sergeant in the United States Air Force assigned to Shaw Air Force Base near Sumter, South Carolina. The defendant is a corporation with its principal place of business in Sumter, South Carolina and is engaged in the business of acting as a real estate broker representing buyers and sellers of real property. Plaintiffs contend that as a result of seeing one of defendant's signs on a lot near Shaw Air Force Base, said sign indicating that the house and lot were for sale, they contacted the defendant, and one of defendant's agents, John Pate, came to their residence located on Shaw Air Force Base and after observing that they were black refused to show them the dwelling which was known as 2377 Tall Oak Road. The plaintiffs further allege that at the time of this refusal to show them the real estate they were in the market to purchase a home and have subsequently purchased a home in the Sumter area. They allege that this refusal to show the home was a violation of the Fair Housing Act and they have suffered humiliation, embarrassment and emotional distress and have incurred expenses as a result of defendant's act. Plaintiffs seek damages against the defendant and also an injunction permanently restraining and denying defendant from refusing to show, negotiate and sell real estate to plaintiffs and others in similar situations.

Defendant contends that it has not violated any provisions of the Fair Housing Act and also asserts that Pate was an independent contractor and not an agent of John M. Brabham Agency, Inc.

After hearing the testimony, reading the various depositions, considering the documents introduced into evidence and reviewing the applicable law, the Court makes the following

## FINDINGS OF FACT

1. That Roland Bradley and Ernesteen Bradley are citizens and residents of Sumter County, South Carolina and in July 1974 Roland Bradley was a sergeant in the United States Air Force attached to Shaw Air Force Base near Sumter, South Carolina.

2. That John M. Brabham Agency, Inc. is a South Carolina corporation with its principal place of business in Sumter, South Carolina and is engaged in the business of operating a real estate agency and acting as a real estate broker in buying and selling real estate for clients, including residential property.

3. That in late July 1974 Ernesteen Bradley called defendant's office and asked that an appointment be made for the plaintiffs to see a certain dwelling known as 2377 Tall Oak Road in the Oakland Subdivision. Prior to making this call plaintiffs had driven by said address and noticed a "for sale" sign of the defendant in the front yard. The call to the defendant was the result of the telephone number that appeared on the for sale sign.

4. As a result of this telephone call Mrs. Bradley talked with one John Pate, a salesman for defendant, and an appointment was made for plaintiffs to meet Mr. Pate at their home in the base housing area of Shaw Air Force Base at 5:00 p. m. on July 29, 1974 for the purpose of inspecting 2377 Tall Oak Road.

5. At the appointed hour Mr. Pate arrived at plaintiff's house. At the time he was driving an automobile, which belonged to him, but which had a Brabham Agency sign attached to the front door advertising defendant's business. When Pate first arrived only Mrs. Bradley was present. Seeing that she was black, Pate advised her that her family would not be happy living at 2377 Tall Oak Road. She advised him that she thought the Oakland Subdivision was open housing to blacks and whites and he responded that parts of the subdivision were open and parts were not. Pate stated emphatically that he preferred not to show her the house and then suggested that they look at property in the Runnymede Subdivision, which is predominately black. Pate

also suggested that plaintiffs contact Avenue Realty Company, a real estate brokerage firm owned by blacks and specializing in sale to black purchasers.

6. Shortly after Pate had made the statements to Mrs. Bradley, Sergeant Bradley came into the house and Pate advised him that his family would not be happy at the Tall Oak address, again suggested the Runnymede Subdivision and Avenue Realty Company. On several occasions he stated that he preferred not to show the house at 2377 Tall Oak Road to either of the plaintiffs, saying that it would embarrass him (Pate) and he would rather lose the commission than sell the house to them.

7. In the face of Pate's statements and his repeated preference not to show them the house, plaintiffs never demanded of him that they be allowed to inspect the property.

8. That the following day plaintiffs reported this incident to the Shaw Air Force Base housing office and lodged a complaint against the defendant which was investigated by the housing office.

9. That defendant has a real estate broker's license issued by the State of South Carolina and Pate and three or four other agents have salesman licenses and operate under defendant's broker's license. That defendant contends that the real estate agents associated with defendant are independent contractors, but defendant furnishes them with an office, secretary, does all of the advertising, furnishes stationery, copies of contracts and listing agreements and receives approximately 50 percent of the commission when an agent makes a sale.

10. That Pate had business cards printed with his name and defendant's name thereon which were used in the business of buying and selling real estate. That a day or so after July 29, 1974, Pate called Avenue Realty, the black real estate agency, and suggested to the owner thereof that he contact the plaintiffs.

11. That when personnel from the Shaw Air Force Base housing office contacted Mr. Brabham, owner of defendant corporation, he exhibited a letter dated July 30, 1974 from Lt. Col. F. J. McKenna, Jr., owner of 2377 Tall Oak Road cancelling the listing of the property with defendant. At the same time Mr. Brabham advised the representative from the housing office that he had discussed the matter with Pate and upheld Pate's decision not to show the house to plaintiffs.

12. That the plaintiffs had never before attempted to buy a house and were unfamiliar with the laws and customs regarding the purchase of real estate. That as a result of defendant's refusal to show plaintiffs the house because of their race, plaintiffs suffered embarrassment and humiliation and were denied the opportunity of purchasing the property.

## CONCLUSIONS OF LAW

A. The Court has jurisdiction pursuant to 28 U.S.C. § 1345 and 42 U.S.C. § 3612.

B. That 42 U.S.C. § 1982 provides: "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

C. Title 42 U.S.C. § 3604 provides in part:

". . . it shall be unlawful—

(a) to refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, or national origin."

D. That the provisions of the Fair Housing Act apply to the defendant, the plaintiffs herein and the dwelling located at 2377 Tall Oak Road near Sumter, South Carolina.

E. That the efforts by Mr. Pate, an agent of the defendant, to discourage plaintiffs from inspecting the dwelling in question were made because of plaintiffs' race and were in direct violation of 42 U.S.C. § 3604(a), since such actions amounted to a refusal to negotiate because of race. Also Pate's action in attempting to divert plain-

tiffs away from Oakland Subdivision and into Runnymede Subdivision, an all black area, and his efforts to have them contacted by Avenue Realty Co. were all in violation of the same act. *See United States v. Henshaw Brothers, Inc.,* 401 F.Supp. 399 (E.D. Va.1974). Under the liberal construction of the Fair Housing Act, as required under numerous decisions of various federal courts throughout the land, sophisticated modes of discrimination as well as the obvious method of discrimination are prohibited.

■ F. Defendant's contention that Pate acted as an independent contractor and therefore it is not responsible for Pate's actions lacks support in either the facts or the law. Although defendant may not have controlled Pate's day to day activities or directly supervised his methods of sale or contacts with prospective customers, Pate did act on behalf of defendant, with defendant's consent, in the sale of real estate. Thus, even though defendant may not be liable to plaintiffs under the master-servant doctrine of respondeat superior, defendant would be vicariously liable under the law of agency if Pate was an agent of defendant and he was acting within his authority. Though a person cannot be an independent contractor and a servant, he can be an independent contractor and an agent. Restatement, Agency 2d, § 14N states the rule as follows:

> One who contracts to act on behalf of another and subject to the other's control except with respect to his physical conduct is an agent and also an independent contractor.

Defendant had Pate under contract to act on his behalf in the listing and sale of real estate and could discharge him with or without cause. Pate could not operate as a real estate salesman without the protective umbrella of defendant's broker's license, and defendant provided him with telephone service, secretarial help, an office, advertising, copies of sales contracts and other documents needed in the business. Pate also had business cards showing his name, the name of defendant, the office telephone and his residence telephone. Defendant shared a large percentage of the fee or commission earned by Pate. Under these circumstances, there can be no doubt that Pate was an agent of defendant even if he was also an independent contractor.

The question thus becomes whether or not Pate's refusal to negotiate with plaintiffs was within his authority. If it was, then defendant is vicariously liable for the actions of Pate. Restatement, Agency 2d, § 7 provides the following definition of authority:

> Authority is the power of the agent to affect the legal relations of the principal by acts done in accordance with the principal's manifestations of consent to him.

■ In the case at bar, Pate had express authority to enter into contractual relationships on behalf of defendant. In fact, that was the purpose of his employment by defendant. Under well-settled principles of agency law, a principal is liable to a third person upon a transaction conducted within the agent's authority. See Restatement, Agency 2d, § 140. Thus an agent with Pate's authority could contract to sell a house and bind the principal. In most instances, the application of vicarious liability for the *failure* to contract would not occur because a contract is a consensual relationship between parties. Generally, a *duty* to contract is antithetical to the consensual requirements of contract law. The Fair Housing Act, however, represents the unusual situation in which there is, under the circumstances promulgated by the Act, a duty to contract. If the agent is acting pursuant to his authority to contract, which is clearly established here, and he refuses to contract because of the race of the other party, it must follow that the principal would therefore be liable just as if the agent had entered into a contract pursuant to his authority. The liability accrues to the principal in this situation, as in the situation where a contract is in fact made, from the exercise of the agent's authority to contract. Thus defendant is liable in the present case for Pate's failure to meet his duty to contract or at least enter into the negotiations therefor.

This conclusion conforms with the result reached by several other courts. In *United States v. Real Estate Development Corp.*, 347 F.Supp. 776 (N.D.Miss.1972), the Court stated:

The resident managers and managers of the defendants, as agents of the defendants, are authorized to represent the defendants and can rent in no other capacity. Their acts and statements, made within the scope of their agency, are attributable to the defendants, whose duty to comply with the law is non-delegable.
. . . [citations omitted]

*See also Stevens v. Dobs, Inc.*, 483 F.2d 82 (4th Cir. 1973), a case in which neither the manager nor the defendant president and actual owner of defendant corporation ever saw the plaintiff, but the corporation and its owner were held responsible for discrimination by their agents and employees.

In *Marr v. Rife*, 503 F.2d 735 (6th Cir. 1974), the Court held the proprietor of a real estate agency liable for acts of his salesman whether or not such person acted with the approval of the broker or at his direction and where there was no evidence that the owner joined in any discriminatory acts. This liability was imposed by looking to the purpose behind the Fair Housing Act and applying federal law and rejecting the lower court's application of state law.

■ Finally, defendant is liable for the actions of Pate under the principle of ratification. When defendant's president and owner approved Pate's actions in the present case in discussions with the Shaw Air Force Base housing office representative several days after the incident in question, defendant ratified these actions and is thus liable therefor. See Restatement, Agency 2d, § 82.

■ G. Since plaintiffs have proved by a preponderance of the evidence a violation of 42 U.S.C. § 3604, it is unnecessary to reach a conclusion under 42 U.S.C. § 1982. Because of this violation, plaintiffs are entitled to recover their damages. Damages in these cases have been broken down into three categories: direct economic loss, emotional distress, including humiliation and embarrassment, and loss of civil rights. The Court finds that plaintiffs have not proved any direct financial loss, but have proved emotional distress and loss of civil rights. Since defendant's owner and president ratified and approved the action of his salesman, the Court finds this to be evidence of willfulness and that an award of punitive damages in this case is proper pursuant to 42 U.S.C. § 3612(c).

H. There has been no showing that the plaintiffs are financially unable to assume the attorney's fees in this case and, therefore, attorney's fees will not be awarded. 42 U.S.C. § 3612(c).

■ I. The Court finds that an award of Two Thousand and No/100 ($2,000.00) Dollars actual damages for emotional distress is proper in this case, together with Five Thousand and No/100 ($5,000.00) Dollars for loss of plaintiffs' civil rights, and Five Hundred and No/100 ($500.00) Dollars punitive damages, making a total of Seven Thousand Five Hundred and No/100 ($7,500.00) Dollars, shall be awarded to the plaintiffs against the defendant.

IT IS, THEREFORE, ORDERED that the plaintiffs Roland Bradley and Ernesteen Bradley have judgment against defendant John M. Bradham Agency, Inc. in the amount of Seven Thousand and No/100 ($7,000.00) Dollars actual damages and Five Hundred and No/100 ($500.00) Dollars punitive damages, together with the costs of this action.

IT IS FURTHER ORDERED that the John M. Bradham Agency, Inc., its agents, servants, officers and employees be and they are hereby enjoined from any further violation of the Fair Housing Act, 42 U.S.C. § 3601 et seq. in the sale, rental or offering to sell or rent real property and shall not discriminate against any person or persons because of race, color, religion, sex or national origin.

AND IT IS SO ORDERED.