Michael T. ROSE, Appellant,

v.

Jules SILVER et al., Appellees.

No. 12555.

District of Columbia Court of Appeals.

Argued April 13, 1978.

Decided Oct. 30, 1978.

Randy M. Mott, Washington, D. C., for appellant.

Harvey M. Katz, for appellees.

Before NEWMAN, Chief Judge, and MACK and FERREN, Associate Judges.

FERREN, Associate Judge:

This appeal presents one question: whether an attorney (the appellant) hired by a Connecticut corporation and its president (the appellees) and sent to the District of Columbia to establish an office, negotiate on behalf of the corporation with the federal Food and Drug Administration (FDA), and, if necessary, litigate against the FDA, can sue the corporation in Superior Court under the District of Columbia "long-arm statute." D.C.Code 1973, § 13–423(a)(1).[1]

---

1. Section 13–423(a)(1) provides as follows:

(a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agents, as to a claim for relief arising from the person's—

(1) transacting any business in the District of Columbia . . ..

Primarily on the basis of our decision in *Environmental Research International, Inc. v. Lockwood Greene Engineers, Inc.,* D.C. App., 355 A.2d 808 (1976) (en banc), the trial court dismissed the complaint for lack of personal jurisdiction. We hold that *Lockwood Greene, supra,* is materially different from this case, that appellant did obtain personal jurisdiction over appellees under the long-arm statute, and that the trial court's dismissal accordingly must be reversed and appellant's complaint reinstated.

## I.

According to the complaint and proposed amended complaint (which the court denied leave to file), on September 16, 1974, attorney-appellant Michael T. Rose, a resident of Colorado, entered into a contract with appellees Masti-Kure Products Company, Inc., a Connecticut corporation, and Jules Silver, its president and chief executive officer, also a resident of Connecticut, for the provision of legal services. Pursuant to that agreement, appellant was to negotiate with the FDA and, if necessary, litigate in an effort to keep the corporation's product, "Masti-Kure," an antibiotic used to treat dairy cattle, on the market until the FDA took final action on its preliminary notice of decertification of that product. (According to appellant's brief, which appellees do not dispute on the point, the FDA had acted to revoke the certification of Masti-Kure as well as similar products manufactured by other firms, on the ground of inadequate evidence of the products' effectiveness.)

The agreement provided for remuneration of $2,000 per week for a minimum of 60 billable hours, as well as a $500 per week contingency fee dependent on appellant's success in obtaining continued marketability of Masti-Kure until final FDA action. The agreement also authorized appellant to incur reasonable expenses for "office and apartment rentals, secretarial services, telephone services, transportation costs, costs of research assistants, [and] documents reproduction costs."

Appellant accordingly moved to the District of Columbia to perform the services, incurring expenses as authorized. He claims that between September 2 and October 21, 1974, he negotiated with the FDA, then filed a suit in the federal district court here, *Masti-Kure Products Company, Inc. v. Weinberger,* No. 74–1444 (D.D.C.1974), and eventually obtained a preliminary injunction permitting the marketing of Masti-Kure until final FDA action.

In the present complaint, filed March 30, 1977, appellant seeks a total of $14,253.62— $3,500 for unpaid contingency fees, $753.62 for unreimbursed expenses, and $10,000 in consequential damages attributable to alleged impairment of his credit and expenses incurred in attempting to collect from appellees. The trial court granted appellees' motion to dismiss for want of personal jurisdiction on June 7, 1977, and, on August 5, 1977, denied appellant's motion for reconsideration.

## II.

We have recognized that in enacting the long-arm statute, D.C.Code 1973, § 13–423, Congress intended to provide District of Columbia courts with in personam jurisdiction equivalent in scope to that in effect in the neighboring states of Maryland and Virginia. *Lockwood Greene, supra* at 810; *Margoles v. Johns,* 157 U.S.App.D.C. 209, 483 F.2d 1212 (1973); see S.Rep. No. 405, 91st Cong., 1st Sess. 35 (1969); H.R.Rep. No. 907, 91st Cong., 2d Sess. 61 (1970). We have acknowledged, too, that Maryland and Virginia have interpreted their statutes to permit the exercise of personal jurisdiction over nonresident defendants to the full extent permitted by the due process clause of the Fifth and Fourteenth Amendments. *Lockwood Greene, supra* at 810–11; see *Kolbe Inc. v. Chromodern Chair Co.,* 211 Va. 736, 180 S.E.2d 664 (1971); *Groom v. Margulies,* 257 Md. 691, 265 A.2d 249 (1970). Thus, the principal question here is whether appellant can bring his suit in the District

of Columbia under § 13–423(a)(1) ("transacting any business"), consistent with due process. *See Lockwood Greene, supra* at 810–11.

The Supreme Court recently has stated that "[t]he existence of personal jurisdiction . . . depends upon [1] the presence of reasonable notice to the defendant that an action has been brought . . ., and [2] a sufficient connection between the defendant and the forum state as to make it fair to require defense of the action in the forum." *Kulko v. Superior Court of California*, 436 U.S. 84, 91, 98 S.Ct. 1690, 1696–97, 56 L.Ed.2d 132 (1978) (citations omitted). As to the second requirement—the only one at issue here—the Court reaffirmed the rule of *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), that fairness presupposes a defendant has had "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* at 316, 66 S.Ct. at 158 (citation omitted). *Accord, Shaffer v. Heitner*, 433 U.S. 186, 207–12, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). Necessarily, according to *Kulko, supra,* "the 'minimum contacts' test of *International Shoe* is not susceptible of mechanical application; rather, the facts of each case must be weighed to determine whether the requisite 'affiliating circumstances' are present." *Kulko, supra* 98 S.Ct. at 1697 (citing *Hanson v. Denckla*, 357 U.S. 235, 246, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)).

In *Lockwood Greene, supra,* we applied the "minimum contacts" test to facts analogous—but not similar—to those in the present case. There we affirmed dismissal for lack of jurisdiction of an action brought under § 13–423(a)(1) by Environmental Research, a District of Columbia corporation, for services rendered in the District of Columbia under a contract with two foreign corporations, Lockwood Greene and Penn Dye. Environmental Research, a consulting firm, had learned that Lockwood Greene and Penn Dye were interested in seeking a construction grant from the Environmental Protection Agency (EPA) to help solve an industrial waste problem. Environmental Research accordingly contacted Lockwood Greene and Penn Dye, offering its services to help prepare the application and obtain the EPA grant. We accepted the trial court's finding that Environmental Research was an "independent contractor" which had solicited the foreign corporations as customers. We then concluded that neither the appellant's activities in the District of Columbia nor the corporate officers' own occasional visits here to meet with appellant and EPA officials could meet the minimum contacts test, as articulated in *International Shoe, supra,* and *Hanson v. Denckla, supra;* i. e., "some act by which the defendant purposefully avails itself of the privilege of conducting activities with the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla, supra* at 253, 78 S.Ct. at 1240.

Our discussion turned on two findings: first, the foreign corporations could not be said to have established a presence in the District of Columbia solely through an agreement with Environmental Research, an independent contractor; "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Id.; see Lockwood Greene, supra* at 812. Second, the occasional visits of the corporation's officials could not constitute the transaction of business in the District, given the long-standing principle that mere entry by nonresidents for the purpose of contacting federal government agencies cannot serve as a basis for in personam jurisdiction (commonly called the "government contacts" principle). *Id.* at 813; *see Weisblatt v. United Aircraft Corp.,* D.C.Mun.App., 134 A.2d 713 (1957); *Fandel v. Arabian American Oil Co.,* 120 U.S.App. D.C. 193, 345 F.2d 87 (1965); *Traher v. DeHavilland Aircraft of Canada, Ltd.,* 111 U.S.App.D.C. 33, 294 F.2d 229 (1961), *cert. denied,* 368 U.S. 954, 82 S.Ct. 397, 7 L.Ed.2d 387 (1962); *Mueller Brass Co. v. Alexander Milburn Co.,* 80 U.S.App.D.C. 274, 152 F.2d 142 (1945); *Siam Kraft Paper Co., Ltd. v. Parson & Whittemore, Inc.,* 400 F.Supp. 810

(D.D.C.1975), *aff'd*, 172 U.S.App.D.C. 224, 521 F.2d 324 (1975).

### III.

This case is different. Reversal here is mandated by the fact that appellant Rose—unlike the appellant in *Lockwood Greene, supra*—was not an independent contractor. The record reflects that he was appellees' agent. It follows, therefore, even without regard to the occasional visits to the District by appellees' other representatives, that appellees were "transacting . . business" in the District "by an agent" within the meaning of § 13–423(a)(1), *see* note 1 *supra*, and that appellees accordingly had established the "minimum contacts" necessary for personal jurisdiction over them in the District consistent with due process. We have arrived at this conclusion after determining, for long-arm jurisdictional purposes, what an "agent" is (in contrast with an "independent contractor") and then applying the test to the facts here.[2]

According to the Restatement (Second) of Agency § 1(1) (1957), "[a]gency is the fiduciary relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf *and subject to his control*, and consent by the other so to act." [Emphasis added.] For jurisdictional purposes, the courts have distinguished an agent from an independent contractor by reference to the measure of control. More particularly, the concept of independent contractor underlying the result in *Lockwood Greene, supra*, was derived from cases such as *Read v. LaSalle Extension University*, 81 U.S.App.D.C. 177, 156 F.2d 575 (1946), where the court used that term to describe a salesman who solicited students for the appellee school on a commission basis, "personally bore all expense which he incurred," and "was not in any way subject to the control of the appellee as to the time and manner of soliciting students for it." *Id.*; *see Lockwood Greene, supra* at 812 n.7; *National City Development Co. v. Fadeley*, D.C.Mun.App., 148 A.2d 306, 307–08 (1959).[3] It is this lack of control over an independent contractor that results in the contractor's "unilateral activity" which the Supreme Court in *Hanson v. Denckla, supra* held not imputable to the out-of-state defendant for the purpose of obtaining personal jurisdiction. Control over the forum state actor, on the other hand, results in "the defendant's purposefully avail[ing] itself of the privilege of conducting activities within the forum State," *id.* at 253, 78 S.Ct. at 1240—enough to satisfy the "minimum contacts" test.

We are satisfied the record establishes that appellant should be characterized as appellees' agent. Mr. Silver and Masti-Kure sought out Mr. Rose (a Colorado resident) in California and established him in a

2. The parties negotiated the contract in Connecticut. Appellees executed it in Connecticut; appellant signed it in the District of Columbia. The contract was performed in the District of Columbia, and appellant received some or all of his payment there. We conclude that the District of Columbia has the most significant interest in determining the relationship between the parties; accordingly, this relationship should be characterized by reference to District of Columbia law. *See Fowler v. A & A Co.*, D.C. App., 262 A.2d 344, 348 (1970); *Clayman v. Goodman Properties, Inc.*, 171 U.S.App.D.C. 88, 92 n.22, 518 F.2d 1026, 1030 n.22 (1973); Restatement (Second) of Conflict of Laws § 291, Comment f (1971) (most significant contact in determining agency relationship is place where agent is to act on principal's behalf.)

3. The Restatement (Second) of Agency (1957) divides "agent" into two categories, "servant" and "non-servant," primarily for purposes of analyzing the extent of the principal's responsibility to third persons for the torts of his or her agent. *Id.* §§ 2, 250–67. Non-servant agents are within a category called "independent contractor,"

> (3) An independent contractor is a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking. *He may or may not be an agent.* [*Id.* § 2(3) (emphasis added).]

For jurisdictional analysis, as indicated in the text and in *Lockwood Greene, supra*, the term "independent contractor" is used to describe a contracting party who is sufficiently beyond control of the principal to be outside an agency relationship altogether; *i. e.*, the term is limited to a "nonagent independent contractor." *Id.* at § 14N, comment b.

Washington, D.C. office to negotiate and, if necessary, litigate with the FDA.[4] Appellant was essentially salaried (with the incentive of an additional contingency fee). Appellees agreed to pay for all reasonable expenses, including not only an office, secretarial service, and research assistance, but also appellant's own apartment rental. *Compare Read v. LaSalle Extension University, supra.* Finally, as an attorney, and thus as a fiduciary, appellant Rose was subject to appellees' "right to direct and control." *Brinkley v. Farmers Elevator Mutual Insurance Co.,* 485 F.2d 1283, 1286 (10th Cir. 1973). "In general, the relation of attorney and client is one of agency and the general rules of law applicable to agencies apply." *Hensley v. United States,* 108 U.S. App.D.C. 242, 244, 281 F.2d 605, 607 (1960); *see Brem v. United States Fidelity and Guaranty Co.,* D.C.App., 206 A.2d 404, 408 n.5 (1965); *Qualls v. Field Enterprises Education Corp.,* 302 F.Supp. 152, 153 (E.D.Mo. 1969); *Yanchor v. Kagan,* 22 Cal.App.3d 544, 549, 99 Cal.Rptr. 367, 370 (1971). Accordingly, both because of (1) appellees' initiative in seeking out appellant and directing or ratifying his move to the District and (2) the inherent control relationship between client and attorney, we conclude that appellant was appellees' agent in the District of Columbia, not an independent contractor.

The trial court, in dismissing for want of personal jurisdiction, did not expressly find that appellant was a "nonagent independent contractor." *See* note 3 *supra.* The court implicitly did so, however, in finding that appellees did not "establish an office in the District of Columbia," and that appellant "relie[d] exclusively on his own actions in the District of Columbia, not any act of the defendants performed by them within the jurisdiction of the court." Contrary, however, to the facts in *Lockwood Greene, supra,* the record in this case manifests "that degree of control by appellees over appellant's actual performance of its functions which would be necessary for an agency relationship." *Id.* at 812 n.7. We conclude that the trial court, in perceiving appellant to be a nonagent independent contractor, was "plainly wrong" and "without evidence to support" such a finding. D.C. Code 1973, § 17–305(a).[5]

### IV.

We must deal, finally, with the question whether appellant, despite being an agent transacting business for appellees in the District within the usual *meaning* of that concept, is nevertheless precluded from obtaining jurisdiction over appellees by virtue of the "government contacts" principle. That principle deems one not to be transacting business in the District of Columbia, or, perhaps more accurately, it exempts one

4. The record does not reveal whether appellees expressly directed appellant to open an office in the District of Columbia, as opposed to negotiating with the FDA out of an office in a different location and litigating in a different federal district court (which the parties concede could have been done). Appellees, however, undoubtedly foresaw and approved appellant's move to the District of Columbia to carry out the contract. Such awareness of an agent's performance in the forum state is sufficient manifestation of the nonresident principal's purposeful activity there to meet due process requirements for suing that principal in the forum state. *See Product Promotions, Inc. v. Cousteau,* 495 F.2d 483, 496 (5th Cir. 1974) (sale of sonic fish-call devices); *Zerbel v. Federman & Co.,* 48 Wis.2d 54, 63–64, 179 N.W.2d 872, 877 (1970) (services of a certified public accountant), *appeal dismissed,* 402 U.S. 902, 91 S.Ct. 1379, 28 L.Ed.2d 643 (1971); *Colony Press Inc. v. Fleeman,* 17 Ill.App.3d 14, 17–18,

308 N.E.2d 78, 80 (1974) (newspaper advertising layouts); *Compania de Astral, S. A. v. Boston Metals Co.,* 205 Md. 237, 107 A.2d 357 (1954) (sale of frigates for commercial use), *cert. denied,* 348 U.S. 943, 75 S.Ct. 365, 99 L.Ed. 738 (1955).

5. This decision is based on the pleadings, as well as on supplementary facts proffered of record and not contested. We acknowledge that an eventual factual showing that materially differs from the record to date could raise the jurisdictional issue anew. *See Elliott v. Michael James, Inc.,* 182 U.S.App.D.C. 138, 142, 559 F.2d 759, 763 (1977); *Naples v. United States,* 123 U.S.App.D.C. 292, 293–94, 293 n.1, 359 F.2d 276, 277–78, 277 n.1 (1966) (per curiam); *Petition of United States Steel Corp.,* 479 F.2d 489, 494 (6th Cir.), *cert. denied,* 414 U.S. 859, 94 S.Ct. 71, 38 L.Ed.2d 110 (1973).

from assertions of personal jurisdiction in the District, if the "sole contact with the District consists of dealing with a federal instrumentality." *Lockwood Greene, supra* at 813. The principle "finds its source in the unique character of the District as the seat of national government and in the correlative need for unfettered access to federal departments and agencies for the entire national citizenry." *Id.*

This principle emerged from a line of cases holding that employment of a Washington, D.C. correspondent and payment of his office rent did not expose a nonresident newspaper corporation to service of process in the District of Columbia. *Layne v. Tribune Co.*, 63 App.D.C. 213, 71 F.2d 223, *cert. denied*, 293 U.S. 572, 55 S.Ct. 83, 79 L.Ed. 670 (1934); *Neely v. Philadelphia Inquirer Co.*, 61 App.D.C. 334, 336, 62 F.2d 873, 875 (1932). The circuit court stressed the "public interest" in having "many newspapers . . . maintain vigilant correspondents here. If the employment of a Washington correspondent, the announcement of his address, and the payment of his office rent, subjects a nonresident newspaper corporation to legal process in Washington for matter appearing in its paper at home, it would bring in nearly every important newspaper in the nation . . . ." *Id.* at 336, 62 F.2d at 875.

The court applied the principle next in *Mueller Brass, supra,* which held that it precluded suit against a foreign corporation whose only contact with the District was an office established to obtain information about the federal government's wartime contract needs. All the corporation's business, including its sales to the plaintiff-vendee and to the government, took place outside the District; its representative in the District had no authority to enter into business transactions. The court accordingly held that the defendant was not "doing business" in the District, within the meaning of the long-arm statute then in effect. *Id.* 80 U.S.App.D.C. at 277, 152 F.2d 142; *accord, Weisblatt v. United Aircraft Corp., supra ; Fandel v. Arabian American Oil Co., supra ; Traher v. DeHavilland Aircraft of Canada, Ltd., supra.*

In announcing and then applying the government contacts principle, the courts were interpreting the long-arm statute previously in effect, which granted jurisdiction over persons "doing business" in the District—a concept requiring a more "systematic and continuous course of conduct" for jurisdictional reach than the "transacting any business" standard in the present § 13–423(a)(1). *Lockwood Greene, supra* at 813 n.10. Essentially, given the facts of the cases at issue, the courts were saying that government information-gathering in the District did not amount to doing business here. Because, however, § 13–423(a)(1) as it exists today extends in personam jurisdiction to all persons who can be reached consistent with due process, we are left with this question: if a foreign defendant would be reachable under § 13–423(a)(1) consistent with traditional due process analysis—as appellees are here—what legal premise, if any, is left to support the government contacts principle? Or, in this context, is that principle subsumed within due process?

In *Lockwood Greene, supra,* we did not have to come to grips with this question. There, as a matter of due process, the appellees were not reachable because their principal link to the District of Columbia was an independent contractor. We accordingly cited the government contacts principle solely with reference to a minor part of the case: the occasional visits to the District by appellees' personnel to consult with EPA officials. By simply stating that the principle survived amendment of the long-arm statute and citing it in this limited context, we did not have to consider whether these minimal contacts were enough to satisfy due process. (If they were, then a separate government contacts principle precluded jurisdiction; if they were not, then the government contacts principle at least subsumed due process.) Now, however, we must determine whether the government contacts principle is based upon something more than due process.

In *Lockwood Greene* we did recognize that the government contacts principle had

emerged with a First Amendment as well as due process underpinning. *Id.* at 813 n.11. We acknowledged, without holding, that *Mueller Brass, supra,* and succeeding cases had a First Amendment gloss in that they protected one's right to petition the government for a redress of grievances, without fear of the threat of suit if their contacts were limited to asserting that constitutional right. *Lockwood Greene, supra* at 813 n.11.

After reviewing the development of the government contacts principle, we conclude that the First Amendment provides the only principled basis for exempting a foreign defendant from suit in the District of Columbia, when its contacts are covered by the long-arm statute and are sufficient to withstand a traditional due process attack. Whereas historically the government contacts principle was a way of articulating a limitation on the "doing business" provision of the long-arm statute, having both due process and First Amendment roots, it is clear to us that amendment of the long-arm statute to provide for a "transacting any business" standard, while not erasing the government contacts principle, *Lockwood Greene, supra* at 813, has shifted its premise solely to the First Amendment.[6]

Only a few cases have discussed the First Amendment issue in this context, as it pertains to free speech and a free press. *See New York Times Co. v. Connor,* 365 F.2d 567 (5th Cir. 1966). *See also Margoles v. Johns,* 333 F.Supp. 942, 946 (D.D.C.1971), *aff'd,* 157 U.S.App.D.C. 209, 483 F.2d 1212 (1973). None to our knowledge has done so with reference to the right "to petition the Government for a redress of grievances." Thus, consideration of the government contacts principle henceforth will require virtually a fresh inquiry. Here, appellees have not asserted that long-arm jurisdiction would violate the First Amendment; they

have limited their defense to due process, buttressed by the government contacts principle in its earlier, ambiguous incarnation. They are free, however, to raise a First Amendment argument in the trial court, upon remand, if they believe on these or additional facts that there could be merit to it. *See* note 5 *supra.*

The court's order of August 5, 1977, is reversed and the case remanded with instructions to grant appellant leave to file the amended complaint.

*So ordered.*

---

6. Historically, in the cases cited, the government contacts principle emerged to protect entities against claims by third parties based on transactions unrelated to the entity's special governmental purpose in the District of Columbia. D.C.Code 1973, § 13–423(a)(1), of course, refers specifically to jurisdiction over claims arising from a business connection in the District. *See* note 1 *supra.* This opinion, therefore, does not affect analyses, at one time characterized by reference to the government contacts principle, that would preclude long-arm jurisdiction over such third-party claims.