Paul JOHNSON, Plaintiff,

v.

BECHTEL ASSOCIATES PROFESSIONAL CORPORATION, D. C., et al., Defendants.

Civ. A. No. 81–963.

United States District Court,
District of Columbia,
Civil Division.

July 21, 1982.

James Hanny, William F. Mulroney, Ashcraft & Gerel, Washington, D. C., for plaintiff.

Vincent H. Cohen, Robert B. Cave, Hogan & Hartson, Washington, D. C., for Washington Metropolitan Area Transit Authority.

Gary W. Brown, James W. Greene, Macleay, Lynch, Bernhard, Gregg & Attridge, Washington, D. C., for Bechtel Associates Professional Corp., D. C.

## MEMORANDUM AND ORDER

CORCORAN, District Judge.

On February 23, 1982 the defendants Bechtel Associates Professional Corporation, D. C. and Bechtel Civil and Minerals, Inc. (Bechtel)[1] moved this Court for summary judgment on grounds that this tort action against them is barred by Section 80 of the Compact (Compact) creating the Washington Metropolitan Area Transit Authority (WMATA). Plaintiff has opposed, and the parties have submitted an extensive series of briefs on the issue.

On May 17 and 18, 1982, a hearing was held to clarify factual issues. Following the hearing, the parties submitted another series of briefs. The matter is now ripe for decision.

Upon consideration of the submissions of the parties and the relevant portions of the record, the Court concludes that this action against Bechtel is barred by Section 80 of the Compact.

### I. *Background*

WMATA was created by and derives its authority from the Compact, an agreement among Maryland, Virginia, and the District of Columbia, entered into with the approval of Congress, to develop and operate a transit system (METRO) in the D. C. metropolitan area. Pub.L.No.89–774, 80 Stat. 1324 (1966). The Compact is codified at D.C. Code Ann. § 1–2431 *et seq.* (1981).

The Compact authorizes WMATA to enter any contracts necessary to construct a subway system in the D. C. metropolitan area. Under that authorization WMATA contracted with Bechtel to oversee the safety of the subway project and to administer the various construction contracts in the field.

The plaintiff seeks damages from Bechtel for injuries allegedly sustained while working as a hardrock miner on the METRO project. He was employed in that capacity by several contractors over a period of years beginning in 1968. His complaint alleges that he contracted silicosis from exposure to unreasonably high levels of silica dust, and other contaminants, while working in the subway tunnels. Plaintiff attributes his injuries to Bechtel's negligence in the performance of its duties as safety overseer.[2]

Section 80 of the Compact sets forth a limited waiver of WMATA's sovereign immunity. That section provides:

The Authority shall be liable for its contracts and for its torts and those of its Directors, officers, employees *and agent* (sic) committed in the conduct of any proprietary function, in accordance with the law of the applicable signatory (including rules on conflict of laws), but shall not be liable for any torts occurring in the performance of a governmental function. The *exclusive remedy* for such breach of contracts and torts for which the Authority shall be liable, as herein provided, shall be by suit against the Authority. Nothing contained in this Title shall be construed as a waiver by the District of Columbia, Maryland, Virginia and the counties and cities within the Zone of any immunity from suit. (Emphasis Supplied)

Bechtel contends that it acted as an agent of WMATA in the performance of its safety duties, and that accordingly Section 80 bars this action against it. Plaintiff responds that Bechtel's role with respect to safety matters was that of an independent contractor, and thus Section 80's exclusive

---

1. For purposes of this motion there is no need to distinguish between the two Bechtel corporate entities hereinafter referred to collectively as "Bechtel". The discussion and conclusions reached herein apply with equal force to both.

2. Bechtel's safety responsibilities are outlined in the WMATA Coordinated Safety Program and Reporting Procedures Manual, ("Safety Manual"), a comprehensive safety program for subway construction developed by WMATA. Every WMATA–Bechtel contract from 1972 to the present has incorporated the Safety Manual. The provisions of the Safety Manual on which plaintiff's theory of recovery is based are discussed at length in *Caldwell v. Bechtel, Inc.*, 631 F.2d 989 (D.C.Cir.1980).

liability mandate affords it no relief.[3] Defendant concedes that it acted as an independent contractor on the subway project, but argues that Section 80's protection extends to it in any event. For the reasons stated below, we agree with the defendant.

## II. *Discussion*

■ Every agency relationship has two fundamental components *viz.*, consent and control. The relationship is established when the agent consents to act on behalf of the principal, but subject to the principal's control. Restatement (Second) of Agency § 1 (1981); *Riss & Co. v. Ass'n of Western Railways*, 159 F.Supp. 288, 293 (D.D.C.), mot. to vac., den. 162 F.Supp. 69 (1958). Both elements are critical. The parties must clearly manifest their intent that the agent will act on behalf of the principal, and the principal must retain the right to control the agent in the performance of his duties. Restatement (Second) of Agency §§ 1, 15 (1981); *See: N. L. R. B. v. Local No. 64, AFL–CIO*, 497 F.2d 1335, 1336 (6th Cir. 1974) (right to control is fundamental).

■ While the principal's right to control is essential, the degree of control exercised need not be great. It is only necessary that the principal retain "some measure of control" over the agent's activities. *National City Development Co. v. Fadeley*, 148 A.2d 306, 307 (D.C.Mun.App.1959). Nevertheless, the degree of control is important for determining the type of agency relationship involved. A relatively large degree of control is required to establish a master/servant or employer/employee relationship, *Lodge 1858, Am. Fed. of Gov't Employees v. Webb*, 580 F.2d 496, 504–508 (D.C.Cir.1978); *Kelley v. Southern Pacific Co.*, 419 U.S. 318, 95 S.Ct. 472, 42 L.Ed.2d 498 (1974); while a somewhat lesser degree of control is involved in an independent contractor relationship. *Webb, supra* at 504–505. For purposes of this motion we need not determine the precise degree of control exercised by WMATA over Bechtel for, as will be discussed more fully below, we believe WMATA exercised sufficient control over Bechtel to establish an agency relationship.

■ The parties agree that, in the performance of its safety duties, Bechtel acted as an independent contractor. However, Bechtel's independent contractor status is not dispositive of the agency question. For it is clear that "though a person cannot be an independent contractor and a servant, he can be an independent contractor and an agent." *Bradley v. John M. Brabham Agency, Inc.*, 463 F.Supp. 27, 31 (D.S.C. 1978). This rule is set out in the Restatement (Second) of Agency § 14N (1981) as follows:

> One who contracts to act on behalf of another and subject to the other's control except with respect to his physical conduct is an agent and also an independent contractor.

A number of courts have endorsed the rule. *See: Petition of United States*, 367 F.2d 505, 509 (3rd Cir. 1966) (following § 14N); *Smith v. United States*, 346 F.2d 449, 453 (4th Cir. 1965) (following § 14N); *Rose v. Silver*, 394 A.2d 1368, 1371 n.3 (D.C.App. 1978) (distinguishing application of the rule in tort liability analysis from application in jurisdictional analysis). Thus, despite Bechtel's independent contractor status, we conclude that it could act as an agent of WMATA in the performance of its safety duties.

## A. *The WMATA–Bechtel Contract*

The WMATA–Bechtel contract[4] evidences a clear intent to establish an agency relationship in accordance with the foregoing principles. Certain terms of the contract clearly contemplate that Bechtel will act on behalf of WMATA in the perform-

---

**3.** The parties agree that construction of the subway system was a proprietary function within the meaning of Section 80.

**4.** Bechtel's relationship with WMATA has remained substantially the same from 1971 to the present. The changes in the Bechtel–WMATA contract during that period have been, for purposes of this motion, insignificant. Accordingly, our discussion will refer only to the 1979 contract, the most recent contract submitted by the parties.

ance of its safety duties, while other terms grant WMATA a considerable measure of control over Bechtel's performance of its duties.

### 1. Bechtel's Authority to Act

The parameters of Bechtel's authority are defined in the *Scope of Services* provisions of the Bechtel–WMATA contract. Section 1 therein provides that Bechtel shall keep WMATA "fully informed of all operations under this contract, and [Bechtel] shall have authority to conduct these operations for and *in the name of [WMATA], subject to the approval of [WMATA]."* [5] (Emphasis Supplied) Section 7 therein requires Bechtel to provide safety services to ensure contractor compliance with WMATA's Safety Program. It authorizes Bechtel to order work stoppages "in the name of [WMATA]", in the event a contractor fails to correct a safety violation. It is thus apparent that the parties intended Bechtel to act on behalf of WMATA with respect to safety matters.

### 2. WMATA's Right to Control

Other provisions in the contract permit WMATA the right to control Bechtel in the performance of its duties. The WMATA Safety Manual provides that the WMATA Safety Engineer "shall evaluate and direct the activities of the Bechtel Safety Dept. (sic)." *Id.* at 10, while Section 8 of the *Scope of Services* requires WMATA approval of the Bechtel Resident Engineers' Manual, the operations manual for Bechtel's senior field representatives. Moreover, the contract gives WMATA considerable control over Bechtel's staffing decisions. Article XI of the *General Provisions* grants WMATA the right to approve all personnel hired by Bechtel, while Section III of the *Special Provisions* gives WMATA the right to approve the salary rates of Bechtel personnel. It is apparent from these provisions that WMATA retained the right to control Bechtel in the performance of its safety duties.

### B. Performance of the Contract

The hearing of May 17–18 clearly established that the performance of the Bechtel–WMATA conformed to the agency relationship contemplated by the contract's terms.

Although Bechtel was responsible for overseeing field activities, WMATA actively involved itself in the administration of the construction contracts. During subway construction, the WMATA Contracting Officer served as the focal point and final arbiter in administering all construction contracts. In addition he had authority to direct and control all safety activities. He was assisted in this regard by a permanent staff of WMATA employees. However, in order to avoid fluctuations in staff size due to changes in construction load, the Contracting Officer utilized the Bechtel organization to administer the contracts in the field.

The Contracting Officer's staff and the Bechtel staff meshed in the position of Resident Engineer, ("RE"). Although each RE was an employee of Bechtel, he was designated by contract as the "authorized Representative of the Contracting Officer." The Contracting Officer participated in the selection of each RE, and delegated his authority to the chosen RE by letter. (Df's Exhibit # 1). The delegation was limited to a specific time frame, and authorized the RE to make certain modifications in the contracts under his supervision. (Id.) Once an RE had been designated the authorized representative of the Contracting Officer, Bechtel could not transfer, reassign or fire him without the Contracting Officer's approval.

The RE was the senior Bechtel field representative on each project site. The remainder of the Bechtel organization assisted him in the performance of his duties.[6] In safety matters, the RE received technical support services and field consultations from the Bechtel safety office, as well as the National Loss Control Corporation, ("NATLSCO"), an organization hired by WMATA to assist in safety matters.

---

**5.** This language is reiterated in Article XVI of the *General Provisions* section of the contract.

**6.** An RE's field staff generally consisted of an office engineer, a senior inspector, and other inspectors.

The RE's duties were to represent the Contracting Officer in the job site and to exercise the authority delegated to him by the Contracting Officer. In the discharge of his duties, the RE was subject to the direction of the Contracting Officer and his staff, from whom he received both written and verbal instructions. He was required to comply, and did comply, with these instructions.

The RE was responsible for ensuring that construction contractors complied with the regulations of the Safety Manual at each job site. Although the primary responsibility for safety rested in the construction contractor, the RE had a variety of tools for persuading the contractors to correct safety violations. Normally when a safety violation was detected, the RE simply brought the matter to the attention of the contractor and recommended a course of action. However, if the contractor failed to promptly correct the safety violation the RE could stop isolated work activities or remove specific equipment from service. If a threat of immediate danger to human life presented itself, the RE could shut down the entire job site.

Although the RE was authorized to direct correction of safety violations, in practice he rarely took any major action without first consulting WMATA. The RE often looked to the WMATA Safety Engineer for guidance when a serious safety problem arose on the job site. Moreover, a job site was rarely shut down for a safety violation without prior approval of the Contracting Officer.

**7.** The Court granted plaintiff's motion to amend the complaint to add WMATA as a defendant on May 17, 1982, the first day of the hearing on this motion.

**8.** Plaintiff has cited the legislative history of Section 80 for the proposition that "agent", as used in Section 80, was intended to cover only WMATA personnel. In the plaintiff's view, the term "agent" was not intended to cover large corporations like the defendants herein. However, the legislative history of Section 80 is extremely sparce and at best is inconclusive. *See*: S.Rep.No.1491, 89th Cong., 2d Sess. 19 (1966); H.R.Rep.No.1914, 89th Cong., 2d Sess.,

Thus, it appears to the Court that WMATA exercised sufficient control over Bechtel's performance of its safety duties to establish the agency relationship contemplated by the contract.

## B. *WMATA's Position*

Although WMATA was late in joining this litigation,[7] it has taken the position that Bechtel acted as its agent with respect to safety matters. At the May 17–18 hearing, counsel for WMATA stated WMATA's position as follows: "the Bechtel resident engineer for safety has a limited agency relationship to WMATA." (Tr. 8). Later in the hearing, WMATA's counsel stated that "WMATA does not dispute that Bechtel acts as agent for safety on the construction of the WMATA subway system." (Tr. 275). Indeed, WMATA could hardly have taken any other position, since it permitted Bechtel's resident engineers to carry business cards identifying them as "Authorized Representative[s] of the Contracting Officer", thereby cloaking them with the appearance of agents.

## III. *Conclusion*

Our review of the terms of the WMATA–Bechtel contract convinces us that the parties intended to establish an agency relationship. Under the contract, Bechtel was to perform its safety duties on behalf of WMATA and subject to WMATA's control. Moreover, in practice WMATA exercised a considerable measure of control over Bechtel's safety operations. Furthermore, WMATA has taken the position that Bechtel acted as its agent on safety matters. Therefore, we conclude that Bechtel, as an agent[8] of WMATA, may properly assert Section 80 as a bar to this action.[9]

(1966). Accordingly, we must attribute to the term "agent" its plain meaning. *American Electric Power Service Corp. v. F. E. R. C.*, 675 F.2d 1226, 1241 (D.C.Cir.1982).

**9.** Three other courts in this District have reached a similar conclusion. *See: Ludoph v. Bechtel Associates Professional Corp., D. C.*, 542 F.Supp. 63 (D.D.C.1982); *Eighmey v. Bechtel Associates Professional Corp., D. C.*, No. 81–1261 (D.D.C. June 21, 1982); *Walker v. Bechtel Civil and Minerals, Inc.*, No. 81–1125 (D.D.C. July 8, 1982).

Accordingly, it is this 21st day of July, 1982

ORDERED that the motion of defendants Bechtel Associates Professional Corporation, D. C., and Bechtel Civil and Minerals, Inc. for summary judgment is hereby GRANTED, and that judgment be entered in favor of them in this action.