*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters.  Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 24-SP-0735

JACQUELYN BRENEA N'JAI, APPELLANT,

V.

UNITED STATES DEPARTMENT OF EDUCATION, *et al*., APPELLEES.

On Certified Question from the United States Court of Appeals
for the District of Columbia Circuit
(22-5243)

(Argued May 14, 2025                                    Decided September 4, 2025)

*Jacquelyn Brenea N'Jai*, pro se.

*Taylor Stablein* and *Garfield McIntyre, Jr.*, Student Counsel, with whom *Thomas Burch*, appearing by invitation of the court, was on the briefs, for the University of Georgia School of Law Appellate Litigation Clinic, amicus curiae in support of appellant.

*Natalie J. Salmanowitz*, with whom *Jessica L. Ellsworth* and *Odunayo Durojaye* were on the briefs, for appellees New York University and Long Island University.

Before BLACKBURNE-RIGSBY, *Chief Judge*, MCLEESE, *Associate Judge*, and WASHINGTON, *Senior Judge*.

MCLEESE, *Associate Judge*: The United States Court of Appeals for the

District of Columbia Circuit has certified the following questions to this court:

1.    Under District of Columbia law, is the government contacts exception to personal jurisdiction limited to First Amendment activity between the defendant and a government entity?

2.    If the first question is answered in the affirmative, are the contacts with the Department of Education alleged in the amended complaint here covered under the exception?

When considering certified questions, "we are not limited to the designated questions of law but may exercise our prerogative to frame the basic issues as we see fit for an informed decision." *Akhmetshin v. Browder*, 275 A.3d 290, 292 (D.C. 2022) (brackets and internal quotation marks omitted). We conclude that (1) under this court's decision in *Rose v. Silver*, 394 A.2d 1368, 1374 (D.C. 1978), the government-contacts exception applies only if a defendant can establish that relying on the conduct at issue as a basis for personal jurisdiction would violate the First Amendment; and (2) although our decision in *Rose* is at least arguably inconsistent with this court's prior decision in *Environmental Research International, Inc. v. Lockwood Greene Engineers, Inc.* (*ERI*), 355 A.2d 808 (D.C. 1976) (en banc), *Rose* is the binding precedent for current purposes.

## I. Factual and Procedural Background

In an opinion issued in connection with its order certifying questions to this court, the D.C. Circuit outlined the pertinent factual background. *N'Jai v. U.S. Dep't*

*of Educ.*, 111 F.4th 1288, 1290 (D.C. Cir. 2024).  Assuming the truth of Ms. N'Jai's allegations, Ms. N'Jai attended Long Island University (LIU) from 1986 to 1988 and New York University (NYU) from 1988 to 1989.  *Id.*  While in school, she took out two student loans totaling $5,500, which Ms. N'Jai has paid back in full.  *Id.*

In 1993, a bank analyst used Ms. N'Jai's name to falsely certify federal student loans amounting to $21,200.  *N'Jai*, 111 F. 4th at 1290.  NYU and LIU signed Ms. N'Jai's name on false loan applications and then withheld refunds from the loans.  *Id.*  Ms. N'Jai unsuccessfully appealed to the United States Department of Education (DOE).  *Id.*  After the amount owed on the loans increased to $66,000 due to interest and nonpayment, DOE tried to collect on the loans by contracting with debt collectors, including Immediate Credit Recovery, Inc. (ICI) and FMS Investment Corporation (FMS).  *Id.*  The debt collectors used unlawful practices in their efforts to collect on the fraudulent loans.  *Id.*  Finally, DOE unlawfully garnished Ms. N'Jai's tax refund and threatened to garnish her Social Security checks.  *Id.*

Ms. N'Jai sued DOE, NYU, LIU, ICI, FMS, and others.  *N'Jai*, 111 F.4th at 1290.  The trial court dismissed the claims against NYU, LIU, ICI, and FMS for lack of personal jurisdiction based on the government-contacts exception.  *Id.* at 1290-91. The trial court dismissed Ms. N'Jai's claims against other defendants on different

grounds. *Id.* at 1291. Ms. N'Jai appealed, and the D.C. Circuit affirmed the dismissal of the latter group of defendants. *Id.* With respect to the trial court's ruling relying on the government-contacts exception to dismiss the claims against NYU, LIU, ICI, and FMS, the D.C. Circuit certified the questions noted above. *Id.* at 1291, 1293. ICI and FMS have not participated in the proceedings in this court.

## II. Analysis

The District of Columbia "long-arm" statute, D.C. Code § 13-423, provides that the courts of the District have personal jurisdiction over claims arising from various types of conduct related to the District, including, among other things, "transacting any business in the District," *id.* § 13-423(a)(1), and causing "tortious injury" in the District under specified circumstances, *id.* § 13-423(a)(3), (4).

"The government contacts principle predates the enactment of the D.C. long-arm statute, originating as a way of determining what it meant to be 'doing business' in the District within the meaning of the service-of-process statute then in effect." *Akhmetshin*, 275 A.3d at 292 (citing D.C. Code § 13-103 (1940)). In *ERI*, this court addressed the question whether the "transacting any business" provision of the long-arm statute, D.C. Code § 13-423(a)(1), incorporated a government-contacts exception. 355 A.2d at 810-14.

The court answered that question in the affirmative. *ERI*, 355 A.2d at 810-14. The court made the following primary points: (1) Congress intended the District's long-arm statute to "permit the exercise of personal jurisdiction over nonresident defendants to the extent permitted by the due process clause of the United States Constitution," *id.* at 810-11; (2) Congress did not intend to set aside the government-contacts exception when it enacted the long-arm statute, *id.* at 813; (3) the government-contacts exception "does not hinge upon the wording of the statute," *id.*; (4) "[t]o permit our local courts to assert personal jurisdiction over nonresidents whose sole contact with the District consists of dealing with a federal instrumentality not only would pose a threat to free public participation in government, but also would threaten to convert the District of Columbia into a national judicial forum," *id.*; and (5) "[w]e believe, although we need not so hold, that had Congress intended to abrogate the [government-contacts exception] in enacting the present long-arm statute, it thereby would have been placing an impermissible burden on the First Amendment right of the people to petition the Government for a redress of grievances," *id.* at 813 n.11 (ellipses and internal quotation marks omitted).

This court addressed the government-contacts exception again two years later in *Rose*. 394 A.2d at 1372-74. The court in *Rose* reiterated that Congress intended the D.C. long-arm statute "to permit the exercise of personal jurisdiction over

nonresident defendants to the full extent permitted by the due process clause of the Fifth and Fourteenth Amendments." *Id.* at 1369. The court then posed the question whether the government-contacts exception was subsumed by the Due Process Clause's limits on personal jurisdiction or whether instead the "government contacts principle is based upon something more than due process." *Id.* at 1373. The court stated that *ERI* did not "come to grips with this question," because *ERI* relied on the government-contacts exception "solely with reference to a minor part of the case" and because the court therefore did not have to consider whether the contacts at issue in that part of the case "were enough to satisfy due process." *Id.*

The court in *Rose* explained that *ERI* had indicated that the government-contacts exception "had emerged with a First Amendment as well as due process underpinning." *Rose*, 394 A.2d at 1373-74. After considering *ERI* and other cases applying the government-contacts exception, the court held in *Rose* that "the First Amendment provides the only principled basis for exempting a foreign defendant from suit in the District of Columbia, when its contacts are covered by the long-arm statute and are sufficient to withstand a traditional due process attack." *Id.* at 1374. The court therefore remanded the case to give the defendants the opportunity to raise the argument that an assertion of long-arm jurisdiction under the circumstances of the case "would violate the First Amendment." *Id.*

The defendants in *Rose* sought rehearing en banc, which the court denied over the dissent of two judges who expressed the view that *Rose* was inconsistent with *ERI*. *Rose v. Silver*, 398 A.2d 787 (D.C. 1979) (per curiam); *id.* at 787-91 (Harris, J., dissenting from denial of petition for rehearing en banc); *see also id.* at 787 (Gallagher, J.) (opinion respecting denial of petition for rehearing en banc) (expressing view that division's decision in *Rose* lacked authority to overrule *ERI*).

Considered in isolation, *Rose* seemingly provides a straightforward answer to the first question the D.C. Circuit has certified to this court: the government-contacts exception applies only if a defendant can establish that relying on the conduct at issue as a basis for personal jurisdiction would violate the First Amendment. *Rose*, 394 A.2d at 1374. NYU and LIU argue that this principle in *Rose* is nonbinding dicta, but we do not find that argument persuasive.

The legal principle at issue in *Rose* was not some passing remark that the court did not rely upon as the basis for its decision. To the contrary, the court in *Rose* adopted that legal principle after explicit analysis and then relied on the principle to decide the case. *Rose*, 394 A.2d at 1374. The Supreme Court has held that such lines of reasoning, relied upon as the basis of a decision, constitute binding authority. *See Seminole Tribe v. Florida*, 517 U.S. 44, 67 (1996) ("As a general rule, the principle of *stare decisis* directs us to adhere not only to the holdings of our prior

cases, but also to their explications of the governing rules of law.") (internal quotation marks omitted). This court has expressly endorsed the view of binding precedent articulated by the Supreme Court in *Seminole Tribe*. *Holman v. United States*, 335 A.3d 880, 883 (D.C. 2025). We thus understand *Rose* to have held that the government-contacts exception applies only if a defendant can establish that relying on the conduct at issue as a basis for personal jurisdiction would violate the First Amendment.

NYU and LIU also argue that *Rose* and *ERI* can be read together differently to establish the following approach: (1) the court should apply the government-contacts exception as it existed in prior law to determine whether a defendant's activities in the District constitute "transacting business" within the meaning of D.C. Code § 13-423(a)(1); (2) if the defendant's activities, excluding government contacts, do not constitute "transacting business," then the court lacks personal jurisdiction; and (3) if the defendant's activities, excluding government contacts, do constitute "transacting business," then the court can assert jurisdiction as long as doing so would not violate the First Amendment. On that view, *ERI* interpreted the long-arm statute to have fully adopted the preexisting government-contacts exception, and *Rose* did not affect the scope of the government-contacts exception but rather simply acknowledged the possibility of an additional First Amendment defense to the assertion of personal jurisdiction. We

are not persuaded by this view. To the contrary, the court in *Rose* was considering what the government-contacts exception "is based upon" in order to determine the proper scope of that doctrine in the context of the long-arm statute. 394 A.2d at 1373. Moreover, the court in *Rose* did not interpret *ERI* as having fully adopted the preexisting government-contacts exception in the context of the long-arm statute. *Id.* at 1373-74.

NYU and LIU also argue that if *Rose* conflicts with *ERI*, this court would be bound to follow *ERI* as the earlier decision. We view that argument as raising a difficult issue. We agree that one can reasonably debate whether *Rose*'s interpretation of *ERI* was the best reading of *ERI*. *See, e.g.*, *Companhia Brasileira Carbureto de Calcio v. Applied Indus. Materials Corp.*, 35 A.3d 1127, 1133 n.5 (D.C. 2012) (noting that our decision in *Rose* had "generated controversy . . . and uncertainty," but declining to resolve that uncertainty). On the other hand, as this court explained in *Akhmetshin*, the conceptual basis for the government-contacts exception is itself "uncertain[]" and there has been "ongoing confusion as to the scope of the" exception. 275 A.3d at 294. Moreover, our decision in *ERI* is itself rather unclear. For example, *ERI* rather confusingly says both that Congress intended the long-arm statute to reach to the full extent of the Due Process Clause and that Congress did not intend to abrogate the government-contacts exception. *ERI*, 355 A.2d at 810-11, 813. Those two propositions either are inconsistent or

imply that the government-contacts exception adds nothing to the requirements of the Due Process Clause.

We view our decision in *Rose* as a reasonable—if also reasonably debatable—effort to determine the scope of the government-contacts exception as applied in *ERI* to the District's long-arm statute. For current purposes, we assume for the sake of argument that *Rose*'s interpretation of *ERI* is not the best reading of *ERI*. NYU and LIU argue that, on that assumption, we would be obliged to follow the interpretation of *ERI* that the members of this division think is best, rather than the interpretation of *ERI* that the court adopted in *Rose*. We disagree.

It is true that this court has said generally that where a division of the court is faced with two conflicting prior decisions of the court, the division is "required to follow the earlier decision rather than the later one." *Thomas v. United States*, 731 A.2d 415, 420 n.6 (D.C.1999). As the author of the current opinion has previously explained, however, this court has not squarely addressed whether that principle applies when the later opinion, as part of its holding, expressly addressed and interpreted the initial precedent. *Parker v. K & L Gates, LLP*, 76 A.3d 859, 879-80 (D.C. 2013) (McLeese, J. concurring). It thus is an open question in this court "how a later court should proceed if it believes that there is a conflict between an initial

binding precedent and a subsequent decision that interpreted the initial precedent." *Id.* at 879.

We hold that, at least barring extraordinary circumstances, the division should treat itself as bound by the holding of a subsequent decision that interpreted an earlier decision. A contrary view would have surprising and undesirable consequences, because it would mean that divisions of this court lack authority to adopt binding principles based on the interpretation of prior decisions. Rather, each division would be free to disregard decisions that interpret an initial decision, relying instead solely on the current division's own view about how best to interpret the initial decision. In our view, such an approach would significantly undermine the stability of this court's system of precedent. We thus generally recognize the authority of divisions of the court to issue binding holdings about the proper interpretation of earlier decisions of the court.

We leave open the possibility that extraordinary circumstances might call for a different approach, such as where a division's interpretation of an initial decision is plainly unreasonable. We see no basis for finding such extraordinary circumstances in this case. To the contrary, as we have previously noted, we view *Rose*'s interpretation of *ERI* to be reasonable, if also reasonably debatable. Moreover, we otherwise agree with a number of the substantive points made in *Rose*,

including that the enactment of the long-arm statute undermined a number of the prior justifications for the government-contact exception. *Rose*, 394 A.2d at 1374; *see also Akhmetshin*, 275 A.3d at 295 ("Moreover, many if not all of the concerns that underlie the [government-contacts] exception as it has been applied in [D.C. Code § 13-423(a)(1)] cases can be protected by requiring defendants to show that the exercise of jurisdiction would violate their constitutional rights or implicate other existing doctrines such as forum non conveniens."); *id.* at 296 ("Other underpinnings of the government contacts principle can also be protected through existing doctrines and constitutional inquiries.").

In sum, we view ourselves as bound by the holding of the decision in *Rose* that the government-contacts exception applies only if a defendant can establish that relying on the conduct at issue as a basis for personal jurisdiction would violate the First Amendment.

In light of that conclusion, we decline to address the second question certified by the D.C. Circuit. Because the government-contacts exception applies only if the defendant can establish that it would violate the First Amendment to assert personal jurisdiction over the defendant, there is no remaining issue of local law for this court to address. To the extent that NYU and LIU raise such a constitutional defense, the D.C. Circuit could resolve that issue as a matter of federal law. *But cf. Calder v.*

*Jones*, 465 U.S. 783, 786 n.5, 790 (1984) (in context of libel and defamation actions, Supreme Court "reject[ed] the suggestion that First Amendment concerns enter into the . . . analysis" of whether California's long-arm statute lawfully conferred personal jurisdiction).

For the foregoing reasons, we hold that, under the District's long-arm statute, the government-contacts exception applies only if a defendant can establish that relying on the conduct at issue as a basis for personal jurisdiction would violate the First Amendment.

*So ordered.*