**INVESTMENT COMPANY INSTITUTE, Plaintiff,**

v.

**The UNITED STATES of America, et al., Defendants.**

**Civ. A. No. 82–2532.**

United States District Court, District of Columbia.

Nov. 10, 1982.

James H. Schropp, Washington, D.C., for plaintiff.

Edmund C. Case, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER

JACKSON, District Judge.

Plaintiff Investment Company Institute ("ICI"), the Washington-based trade association of mutual funds, advisers, and underwriters, sues for declaratory and injunctive relief against the United States, the Federal Deposit Insurance Corporation and its board of directors (collectively the "FDIC") and the Boston Five Cents Savings Bank, a mutual savings bank chartered by Massachusetts, and certain "affiliates" (collectively "Bank and Affiliates").[1] The controversy centers on a ruling of the FDIC of September 1, 1982, which, plaintiff alleges, permits the Bank and Affiliates to enter the mutual fund business in violation of Section 21 of the Glass-Steagall Act, 12 U.S.C. § 378(a), and various other federal statutes and regulations.[2] Subject matter jurisdic-

---

1. The affiliates, all of which are Massachusetts business entities, are the School Street Mutual Fund, ("Trust"), the School Street Market Fund and the School Street Money Market Fund (collectively the "Funds"), the School Street Fund Distributor, Inc. ("Distributor"), and the School Street Fund Advisors, Inc. ("Advisor").

2. In February, 1981, the Supreme Court held in *Board of Governors of Federal Reserve System v. Investment Company Institute,* 450 U.S. 46, 101 S.Ct. 973, 67 L.Ed.2d 36 (1981) that bank subsidiaries could function as investment advisers to closed-end investment companies

tion is said to derive from, *inter alia,* 28 U.S.C. § 1331. The case is now before the Court on the motion of the Bank and Affiliates to dismiss for want of *in personam* jurisdiction of them and for improper venue.

Plaintiff relies upon three more or less discrete categories of contacts between the Bank and Affiliates and the District of Columbia to sustain its assertion of this Court's jurisdiction over them. First, plaintiff alleges that the Bank and Affiliates have engaged in a variety of purposeful activity within the District of Columbia in the furtherance of their plan to enter the mutual fund market. For example, the Trust, Distributor, and Advisor have registered with the Securities and Exchange Commission ("SEC") as an investment company, broker dealer, and investment advisor, respectively, and the Distributor has applied for membership in the National Association of Securities Dealers, a trade association located in the District. The Bank has also participated—as intervenor and *amicus curiae*—in the two other cases related to the same matter in the Court of Appeals referred to in n. 2 *supra.* Second, plaintiff asserts that the Bank maintains continuing relationships unrelated to the plan with a number of public and semi-public institutional components of the banking industry headquartered here, including the FDIC, the Federal National Mortgage Association, the Government National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Student Loan Marketing Association, the Federal Housing Administration, and the Veterans Administration. Third, plaintiff notes that some fifty-six of the Bank's savings account depositors apparently reside in the District. These activities in the aggregate, plaintiff contends, constitute a sufficient "presence" in the District of Columbia to enable this Court to exercise *in personam* jurisdiction over the

Bank and Affiliates, notwithstanding they do no traditional banking or brokerage business here, i.e., make no loans, hold no mortgages on District real estate, and maintain no offices to receive deposits, administer trust and estates, or offer investment opportunities.[3]

Although the starting (and perhaps the terminal) point of the analysis of the limits of the *in personam* jurisdiction of any court may be *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), holding that a nonresident defendant must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice," that case is essentially a limitation upon the power of the several states to subject non-residents to the jurisdiction of their courts. The permissible reach of the *in personam* jurisdiction of a U.S. district court in federal question cases is not necessarily co-extensive with the jurisdiction of a state court in which the federal district is located. *Compare Jaftex Corporation v. Randolph Mills, Inc.,* 282 F.2d 508, 510–16 (2d Cir.1960) *with Arrowsmith v. United Press International,* 320 F.2d 219, 225–28 (2d Cir.1963). Subject to due process requirements, "when suit is brought in a federal court on a federally created right, the terms of any applicable federal statute [and] general federal law ... provide the guidelines" as to whether a foreign business entity is amenable to process. 4 Wright & Miller, *Federal Practice and Procedure: Civil,* § 1075, p. 302 (1969). A plaintiff who seeks to enforce a claim as a matter of federal right may be able to bring a foreign defendant before a federal district court where he might not do so in a state court embracing the same district. *See Briggs v. Goodwin,* 569 F.2d 1, 9–10 (D.C.Cir.1977),

---

without violating the Banking Act of 1933 (the Glass-Steagall Act), prompting the Bank to start a money market mutual fund through its Affiliates. This lawsuit (and two others now pending in the court of appeals for this circuit) represent attempts by ICI to prevent its doing so.

**3.** The Bank and Affiliates have made "blue sky" registrations of the Funds' securities in 12 states, primarily in the northeast, but not in the District of Columbia.

*rev'd sub nom. Stafford v. Briggs,* 444 U.S. 527, 100 S.Ct. 774, 63 L.Ed.2d 1 (1980). Conversely there may be instances in which a state's maximum jurisdictional reach may exceed that given by Congress to a federal court within its borders. *See Leroy v. Great Western United Corp.,* 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979), *rev'g Great Western United Corp. v. Kidwell,* 577 F.2d 1256 (5th Cir.1978).

One of the federal jurisdictional rules peculiarly applicable in this circuit is the so-called "government contacts principle" by which certain relationships with federal agencies do not enter the calculus of minimum contacts with the District of Columbia for jurisdictional purposes. *Mueller Brass Co. v. Alexander Milburn Co.,* 152 F.2d 142 (D.C.Cir.1945). The doctrine's rationale ". . . finds its source in the unique character of the District as the seat of national government and in the correlative need for unfettered access to federal departments and agencies for the entire national citizenry." *Environmental Research International, Inc. v. Lockwood Greene Engineers, Inc.,* D.C.App., 355 A.2d 808, 813 (1976) *(en banc).*

> To permit our local courts to assert personal jurisdiction over nonresidents whose sole contact with the District consists of dealing with a federal instrumentality not only would pose a threat to free public participation in government, but also would threaten to convert the District of Columbia into a national judicial forum.

*Id.; accord, Siam Kraft Paper Co. Ltd. v. Parsons & Whittemore, Inc.,* 400 F.Supp. 810 (D.D.C.), *aff'd* 521 F.2d 324 (D.C.Cir. 1975).

ICI argues that the origin of the government contacts principle has been traced to cases involving attempts to acquire jurisdiction over non-resident newspapers on the strength of the activities of their local correspondents and, thus, is limited to First Amendment cases involving freedom of speech or press or the right to petition the government for redress of grievances. *Rose v. Silver,* D.C.App., 394 A.2d 1368, 1373–74 (1978). Plaintiff also says that the Bank and Affiliates' relations with the various banking institutions located in the District, as well as its efforts before the SEC and FDIC were "commercial" in character and, therefore, fall within an exception to the government contacts principle for dealings with the government in a commercial context.

*Rose v. Silver* was an action in D.C. Superior Court by a District of Columbia attorney against his corporate Connecticut client for his fee for services in representing it before and against the Food and Drug Administration. (As a common law breach of contract action it would have been a diversity case had it been brought in this Court). Service of process was made pursuant to the D.C. "long-arm" statute, D.C.Code, § 13–423(a)(1). The trial court dismissed the complaint on the authority of *Environmental Research International, Inc. v. Lockwood Greene Engineers, Inc., supra.* In reversing, a panel of the District of Columbia Court of Appeals distinguished *Environmental Research* on a ground not relevant here but went on to hold that in enacting the long-arm statute Congress intended to confer the maximum constitutionally permissible jurisdiction upon the District's local court system, or, in other words, to eliminate all but the constitutionally imposed impediments to the exercise of that jurisdiction whether of the Due Process or First Amendment varieties, and that the government contacts principle would henceforth be limited to First Amendment dimensions.[4]

The federal cases from this circuit applying the government contacts principle in their respective circumstances, however, have not spoken in traditional First Amendment terms in doing so. They have simply discounted the defendants' business activities in the District by the amount they involved getting information from or giving information to the government, or getting

---

4. *Compare* Harris and Nebeker, JJ., dissenting from the denial of rehearing *en banc, Rose v.*      *Silver,* D.C.App., 398 A.2d 787–791 (1979).

the government's permission to do something, which can only be done in Washington because that is where the government is.[5] Furthermore, the fact that such activities are undertaken for "commercial" purposes would not deprive them of such First Amendment protection as might be required by *Rose v. Silver,* for the First Amendment protects "commercial" speech and the right of petition as well as that undertaken for less mercenary reasons. See *Bates v. State Bar of Arizona,* 433 U.S. 350, 363–365, 97 S.Ct. 2691, 2698–2699, 53 L.Ed.2d 810 (1977); *Eastern Railroad Presidents Conference v. Noerr Motor Freight,* 365 U.S. 127, 136–138, 81 S.Ct. 523, 528–530, 5 L.Ed.2d 464 (1961).

■ The Court concludes, therefore, that the filings by defendants Bank and Affiliates with the SEC and the Distributor's application for membership in the NASD[6] in connection with their plan to sponsor a mutual fund fall within the federal "government contacts principle" rule, whether or not they would do so under the District of Columbia rule of *Rose v. Silver,* and must be excluded from any calculation of intrajurisdictional activity in determining the defendants' amenability to suit here. Those activities are prerequisites to defendants' engaging in the securities business anywhere in the country (if they can do so lawfully at all) which can only be accomplished in Washington.

■ The Bank's participation in the companion litigation in this circuit must similarly be excluded as a basis upon which

to predicate *in personam* jurisdiction over it here. *Aaron Ferer & Sons v. Atlas Scrap Iron & Metal Co.,* 558 F.2d 450, 455 n. 8 (8th Cir.1977); *Dragor Shipping Corp. v. Union Tank Car Co.,* 361 F.2d 43, 49 and n. 12 (9th Cir.), *cert. denied,* 385 U.S. 831, 87 S.Ct. 68, 17 L.Ed.2d 66 (1966). There is a strong public interest in ensuring unfettered access to the courts, *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972), and it has long been the rule that a non-resident is immune from service of process while present in a jurisdiction solely in connection with a pending lawsuit. *Greene v. Weatherington,* 301 F.2d 565 (D.C.Cir.1962). It is somewhat disingenuous for plaintiff to argue that the Bank has "purposely availed itself of the privilege of conducting activities within the forum state," *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958), by entering a lawsuit which ICI initiated for the express purpose of eliminating it as a competitor *in absentia.*

■ The Court also concludes that the Bank's continuing relationships, *qua* Bank, with such governmental or quasi-governmental entities as the VA, FHA, GNMA, and FNMA—integral parts of the nation's mortgage banking system—cannot be regarded as "contacts" with the District of Columbia merely because those agencies are located in Washington. Indeed it would probably be more accurate to state that those agencies are doing business with the

---

5. E.g., the "manifold respects in which the Federal Government touches business concerns ... are common knowledge [making] desirable, if not necessary, the presence here of an agent employed to maintain contact with the Government agencies in respect to reports, allocations and directives relating to materials for production.... We do not think that such activities constitute doing business in the District of Columbia in the jurisdictional sense." *Mueller Brass Co. v. Alexander Milburn Co.,* 152 F.2d 142, 144 (D.C.Cir.1945). *See also Traher v. De Havilland Aircraft of Canada, Ltd.,* 294 F.2d 229, 230 (D.C.Cir.1961) *cert. denied* 368 U.S. 954, 82 S.Ct. 397, 7 L.Ed.2d 387 (1962); *Fandel v. Arabian American Oil Co.,* 345 F.2d 87, 89 (D.C.Cir.1965). *Cf. Ramamurti*

*v. Rolls-Royce, Ltd.,* 454 F.Supp. 407 (D.D.C. 1978) *aff'd* 612 F.2d 587 (D.C.Cir.1980).

6. The NASD, a non-profit Delaware corporation with its headquarters in Washington, is registered with the SEC as the self-regulatory trade association of the over-the-counter securities industry. Submission to its regulation is alternative to direct regulation by the SEC. See 15 U.S.C., § 78o–3 (1978); *First Jersey Securities, Inc. v. Bergen,* 605 F.2d 690, 692–93 (3rd Cir.1979). But even were membership entirely voluntary, it would surely come as a surprise to the members of the many trade associations having offices here that their memberships counted as intrastate business for jurisdictional purposes.

Bank in Massachusetts, because that is where it operates as a bank, than to say that the Bank is purposely attempting to service the secondary mortgage and loan guarantee markets in Washington. Certainly no federally-insured bank elsewhere in the country, or one that ever sold a mortgage to or took a loan guarantee from such an agency, envisions itself as having submitted generally thereby to the jurisdiction of the courts of the District of Columbia. *See World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

The Bank's remaining point of tangency with the District of Columbia is found in the presence of a handful of D.C. residents among its depositors—an adventitious circumstance over which the Bank possesses no more control than petitioners possessed over the whereabouts of the purchaser of the automobile in *World-Wide Volkswagen Corp. v. Woodson, supra,* the dependent child in *Kulko v. Superior Court of California,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978), or the testator in *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

Therefore, although the Court is of the opinion that the following order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal therefrom may materially advance the ultimate termination of the litigation, it is, nevertheless, for the foregoing reasons, this 10th day of November, 1982,

ORDERED, that the motion to dismiss for failure of *in personam* jurisdiction of defendants Five Cents Saving Bank, School Street Mutual Fund, School Street Money Market Fund, School Street Government Securities Funds, School Street Fund Distributor, Inc., and School Street Fund Advisor, Inc., is granted, and the complaint is dismissed as to said defendants.[7]

7. Because the Court has found that it has no personal jurisdiction of the Bank and Affiliates, it is unnecessary to decide whether the District of Columbia would be a proper venue for the action.