ZENECA LIMITED, Plaintiff–Appellee,

v.

## MYLAN PHARMACEUTICALS, INC., Defendant–Appellant.

### No. 97–1477.

United States Court of Appeals, Federal Circuit.

April 1, 1999.

Rehearing Denied; Suggestion for Rehearing In Banc Declined June 3, 1999.

---

Herbert H. Mintz, Finnegan, Henderson, Farabow, Garrett and Dunner, L.L.P., of Washington, DC, argued for plaintiff-appellee. With him on the brief were Robert D. Litowitz, and Barbara R. Rudolph. Of counsel were Michael J. Flibbert, and John C. Lowe.

James H. Wallace, Jr., Wiley, Rein & Fielding, of Washington, DC, argued for defendant-appellant. With him on the brief were Gregory R. Lyons, and James M. Ross.

Before RICH, RADER, and GAJARSA, Circuit Judges.

Opinions filed by Circuit Judges RADER and GAJARSA concurring in the judgment of reversal. Circuit Judge RICH dissents without opinion.

GAJARSA, Circuit Judge.

Mylan Pharmaceuticals, Inc. ("Mylan") appeals from the May 13, 1997 order of the United States District Court for the Western District of Pennsylvania (the "Pennsylvania district court") granting Zeneca Limited's ("Zeneca's") motion to transfer this patent infringement suit to the United States District Court for the District of Maryland (the "Maryland district court"). Judge Rader and I concur in the judgment of reversal of the order of the Pennsylvania district court.

## BACKGROUND

Mylan is a corporation incorporated under the laws of West Virginia with its principal place of business in West Virginia. Mylan is a subsidiary of Mylan Laboratories Inc., which has a place of business in Pennsylvania. Zeneca is a corporation incorporated under the laws of England with its principal place of business in England. In 1996, Mylan petitioned the Food and Drug Administration ("FDA") in Rockville, Maryland pursuant to the Drug Price Competition and Patent Term Restoration Act of 1984, Pub.L. 98–417, 98 Stat. 1585 (1984) (the "Hatch–Waxman Act") to obtain permission to market a generic form of tamoxifen, which is a patented drug owned by Zeneca (U.S. Patent No. 4,536,516). Mylan's petition to the FDA included its abbreviated new drug application (the "ANDA") and a certification pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV), claiming that the '516 patent is invalid or will not be infringed by the manufacture, use or sale of the new drug (the "Petition"). A "paragraph IV" application such as this is an infringement of the patent according to the language of the statute and gives the patent holder a right of action against the applicant. In response to the submission of this Petition, Zeneca filed suit for infringement in the Pennsylvania district court pursuant to 35 U.S.C. § 271(e)(2).

Soon after the suit was filed, the jurisdictional ping pong match we are faced with began. Zeneca successfully filed a motion to transfer the case to Maryland. Finding it lacked personal jurisdiction over Mylan, the Maryland district court dismissed the case and transferred it back to Pennsylvania. The Pennsylvania district court granted Zeneca's motion to transfer the case back to Maryland and certified for interlocutory appeal to this court the question of whether the Maryland district court could properly exercise personal jurisdiction over Mylan. Specifically, the question we are asked to answer today is as follows:

Mylan has only one contact with the forum state Maryland: Mylan's act of filing its tamoxifen ANDA with the FDA in Rockville, Maryland pursuant to 35 U.S.C. § 271(e)(2). Mylan's contact un-

der the statute is a statutory act of patent infringement.... The controlling question of law certified to the Federal Circuit Court of Appeals is whether, in light of the government contacts exception, personal jurisdiction over Mylan in the District Court for the District of Maryland is supported by Mylan's contacts with the FDA in Rockville, Maryland pursuant to 35 U.S.C. § 271(e)(2). *Zeneca Ltd. v. Mylan Pharms., Inc.*, 968 F.Supp. 268, 278–79 (W.D.Pa.1997).

For the reasons stated below, I would hold that the Maryland district court cannot assert personal jurisdiction over Mylan in light of the government contacts exception.

## DISCUSSION

In order to answer the question certified for interlocutory appeal, it is necessary to understand the purpose and scope of the government contacts exception in the context of traditional personal jurisdiction analysis. As developed by the courts of the District of Columbia, the government contacts exception provides that "entry into the District of Columbia by nonresidents for the purpose of contacting federal governmental agencies is not a basis for the assertion of in personam jurisdiction." *Environmental Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.*, 355 A.2d 808, 813 (D.C.1976) (en banc). The rationale for this exception

> finds its source in the unique character of the District [of Columbia] as the seat of national government and in the correlative need for unfettered access to federal departments and agencies for the entire national citizenry. To permit [D.C] courts to assert personal jurisdiction over nonresidents whose sole contact with the District consists of dealing with a federal instrumentality not only would pose a threat to free public participation in government, but also would threaten to convert the District of Columbia into a national judicial forum.

*Id.* Thus, this exception is grounded in concerns regarding the First Amendment right to petition the federal government as well as the policy against the creation of national supercourts in the District of Columbia. The government contacts exception may also have due process underpinnings. *See id.* (explaining that visits by nonresidents to petition the Environmental Protection Agency (EPA) cannot constitute the invocation of the benefits and protections of D.C.'s laws because of the government contacts exception). *See also Cellutech, Inc. v. Centennial Cellular Corp.*, 871 F.Supp. 46, 50 (D.D.C.1994) (using government contacts exception to exclude contacts with federal government from due process analysis); *Investment Co. Inst. v. United States*, 550 F.Supp. 1213, 1216 (D.D.C.1982) (same).

Under this exception, petitioning the national government does not "count" as a jurisdictional contact in the personal jurisdiction analysis. For example, in *Environmental Research*, the District of Columbia Court of Appeals held that visits by the nonresident defendant's personnel to the District of Columbia to consult with EPA officials concerning an application for a grant did not count as a jurisdictional contact, even when the plaintiff's cause of action was related to this governmental contact. *See Environmental Research*, 355 A.2d at 813. Two years after the en banc decision in *Environmental Research*, a panel of the District of Columbia Court of Appeals attempted to narrow the exception by stating that the First Amendment—and not due process concerns—provides the only principled basis for application of the government contacts exception. *See Rose v. Silver*, 394 A.2d 1368, 1374 (D.C.1978). Many federal courts sitting in the District of Columbia, however, have adopted the broad interpretation of the exception as espoused in *Environmental Research* and have noted that the *Rose* panel could not overrule the en banc decision in *Environmental Research*. *See Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 786 (D.C.Cir.1983) (explaining

that the *Rose* panel opinion cannot overrule the en banc decision in *Environmental Research* and expressing hesitancy towards adopting the *Rose* approach). For example, in *Investment Co.*, the court explained:

> The federal cases from this circuit applying the government contacts principle in their respective circumstances, however, have not spoken in traditional First Amendment terms in doing so. They have simply discounted the defendants' business activities in the District by the amount they involved getting information from or giving information to the government, or *getting the government's permission to do something*, which can only be done in Washington because that is where the government is. Furthermore, the fact that such activities are undertaken for "commercial" purposes would not deprive them of such First Amendment protection as might be required by *Rose v. Silver*, for the First Amendment protects "commercial" speech and the right of petition as well as that undertaken for less mercenary reasons.

*Investment Co.*, 550 F.Supp. at 1216–17 (emphasis added).[1]

I am persuaded that the government contacts exception should apply in this case. Allowing jurisdiction based solely on the submission of the Petition would allow for the creation of a national judicial forum in Maryland for generic drug infringement cases. Not even Zeneca attempts to argue that the purpose of the Hatch–Waxman Act was to create such a supercourt. The fact that federal agencies have had to move to states surrounding the District of Columbia is no reason for the government contacts exception not to apply. In addition, it is clear that Mylan was petitioning the government for the right to market its generic drug. The submission of the Petition clearly falls within the First Amend-ment right to petition. It seems obvious that Mylan's contact with Maryland arose out of the mere fortuity that the government agency that must receive the Petition is located in Maryland. It is also worthy of note that the application of the government contacts exception in this case would not deprive Zeneca of a forum in which to seek relief. It has already been established that the Pennsylvania district court has personal jurisdiction over Mylan.

The most interesting argument against application of the exception is that the Hatch–Waxman Act makes the submission of the Petition an act of patent infringement. The submission of the Petition, therefore, is not merely an exercise of a First Amendment right, but is also a tort. I do not believe that this argument undermines the application of the exception for two reasons. First, I believe that treating the Petition as the sole jurisdictional contact that subjects Mylan to personal jurisdiction poses serious constitutional issues because it allows Congress to burden unnecessarily, and possibly impermissibly, a First Amendment right. *See Environmental Research*, 355 A.2d at 813 n. 11 (explaining that, if Congress intended to abrogate the government contacts rule in enacting the D.C. long-arm statute, it would have placed an impermissible burden on the constitutional right to petition).

In addition, refusing to apply the government contacts exception in this case would undermine the purpose of the Hatch–Waxman Act. The purpose of the Hatch–Waxman Act was not to transform FDA filings into torts because such petitions are in and of themselves undesirable acts that society wishes to avoid. The Act was not trying to dissuade generic drug manufactures from filing ANDAs and "paragraph IV" certifications. To the contrary, one of the purposes of the Act was to allow generic drug manufacturers to be able to obtain FDA approval and market

---

1. Whether or not the government contacts exception has due process underpinnings would not change the outcome of this decision because the submission of the Petition is clearly an exercise of the First Amendment right to petition.

their drugs by the time the patent on the relevant drugs expired. To achieve this end, Congress exempted from infringement the making, using or selling of patented drugs to the extent reasonably related to the submission of information for FDA approval. Thus, traditional infringing activity no longer counts as infringing under the Act. However, the patent holder is still entitled to the benefits of its right to exclude until the patent expires. The submission of the ANDA with the paragraph IV certification was therefore called an act of infringement to prevent the commercial marketing of an infringing generic drug before the expiration of the patent. As the Supreme Court has stated previously, the act of infringement here is "highly artificial." *Eli Lilly & Co. v. Medtronic, Inc.*, 496 U.S. 661, 678, 110 S.Ct. 2683, 110 L.Ed.2d 605 (1990). Writing for the Court, Justice Scalia stated that

> an act of infringement had to be created for these ANDA and paper NDA proceedings. That is what is achieved by § 271(e)(2) – the creation of a highly artificial act of infringement that consists of submitting an ANDA or a paper NDA containing the fourth type of certification that is in error as to whether commercial manufacture, use, or sale of the new drug (none of which, of course, has actually occurred) violates the relevant patent.

*Id.*

The submission of such petitions with the FDA serves to resurrect the patent holder's right to enjoy the benefits of his patent and gives him a cause of action. The Petition was not called an act of infringement in order to dissuade generic drug manufacturing or to create a national forum in Maryland. Allowing the submission of the Petition to count as the sole jurisdictional contact for subjecting a generic drug manufacturer to personal juris-

diction results in an unnecessary and unintended punishment for filing a petition with the FDA, which undermines the purpose of the Hatch–Waxman Act.

For these reasons, I would hold that, although the filing of the petition is a statutory act of patent infringement, this is not a sufficient basis to dismiss the application of the government contacts exception in this case.

I note that Judge Rader's opinion begins by accurately stating that, because general jurisdiction is not at issue, Mylan cannot be haled into the courts in the state of Maryland unless (1) it has purposefully availed itself of the benefits and protections of Maryland's laws or purposefully directed its activities at residents of Maryland, and (2) the litigation arises from these activities. However, I cannot agree with his conclusion that

> Mylan's contacts are not actually with the state of Maryland at all. Rather Mylan's contacts involve the federal government whose office for receipt of ANDAs happens to be within that state. In the same sense, Mylan has not purposefully availed itself of the benefits of the laws of Maryland or purposefully directed its activities at Maryland residents. Mylan seeks benefits only from the federal government through the FDA. Therefore, Mylan has directed its activities at the FDA, not at the state of Maryland or its residents.

Unfortunately, under traditional personal jurisdiction analysis, there is no way to avoid the fact that Mylan has purposefully committed a federal tort in Maryland. A party that commits a federal tort in a state is on notice that it may be haled into court in that state. That the Supreme Court has viewed the tortious act as "highly artificial" in a different context[2] is not a prop-

---

**2.** The Supreme Court was faced with the issue of "whether 35 U.S.C. § 271(e)(1) ... renders activities that would otherwise constitute patent infringement noninfringing if they are undertaken for the purpose of developing and submitting to the ... [FDA] information necessary to obtain marketing approval for a medical device...." *Eli Lilly,* 496 U.S. at 663–64, 110 S.Ct. 2683. The Court was not faced with the issue of whether personal juris-

er reason for us to conclude that the ANDA filing is not a "real act" with "actual consequences." An infringement lawsuit can be filed in federal district court because of the filing of a paragraph IV application with the FDA, which demonstrates that such a filing is a real act with serious consequences.

I also disagree that the exercise of jurisdiction would not comport with "traditional notions of fair play and substantial justice" because Maryland "has none of its laws to protect, enforce, interpret, or apply." It is often the case that a state will have none of its laws to apply when federal law issues (such as patent infringement) are at stake. That cannot be a basis for transferring a case. The concurrence also states that Zeneca has no interest in litigating in Maryland because it is a U.K. corporation. However, it appears clear from the briefs filed that Zeneca has a legitimate interest in litigating in Maryland because it could consolidate cases arising from the filing of two different ANDA's with respect to the same patent, which may result in judicial and litigant economy. Thus, under traditional personal jurisdiction analysis, I believe the exercise of personal jurisdiction over Mylan in Maryland would be permissible.

The application of the government contacts exception is therefore necessary in this case because it takes into account what is actually transpiring here: the exercise of the right to petition the federal government. Such activity requires special consideration because the ability of the public to participate freely in government and the possible conversion of states where federal agencies are located into national judicial forums are serious concerns. These concerns are not adequately addressed by a traditional analysis of personal jurisdiction and therefore recognition of the government contacts exception is warranted.

diction could be asserted in Maryland over a party for the filing of a paragraph IV applica-

I also note that the question certified on appeal asks us whether, *in light of the government contacts exception,* personal jurisdiction over Mylan in Maryland exists. We are not being asked whether jurisdiction exists under traditional personal jurisdiction analysis. We should at the very least answer the question certified on appeal.

## CONCLUSION

In view of the opinions of Judges Rader and Gajarsa, the decision of the Pennsylvania district court to transfer the case back to the Maryland district court is reversed and the case is remanded for further proceedings consistent with the judgment of the court.

*REVERSED* AND *REMANDED.*

RADER, Circuit Judge, concurring.

I, too, would end this jurisdictional ping-pong match by reversing the order of the Pennsylvania district court transferring this patent infringement suit to the Maryland district court, but without recourse to the so-called "government contacts exception" to personal jurisdiction. This court need not adopt this exception, which the courts of the District of Columbia created (and only those courts have applied) to finesse jurisdictional questions unique to that forum. Moreover, application of that exception in this case sidesteps the traditional Due Process analysis mandated by the Supreme Court. In my view, the traditional analysis precludes personal jurisdiction over Mylan. Therefore, by applying standard personal jurisdiction rules, I concur.

Personal jurisdiction over an out-of-state defendant involves two inquiries: first, whether the forum state's long-arm statute confers jurisdiction and, second, whether the assertion of personal jurisdiction comports with Constitutional requirements for

tion with the FDA.

due process. *See Genetic Implant Sys., Inc. v. Core–Vent Corp.*, 123 F.3d 1455, 1458, 43 USPQ2d 1786, 1788 (Fed.Cir. 1997) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). Maryland courts have already interpreted that state's long-arm statute, Md.Code Ann., Cts. & Jud. Proc. § 6–103 (1998), to provide jurisdiction to the full extent permitted under the Constitution. *See Talegen Corp. v. Signet Leasing and Fin. Corp.*, 104 Md.App. 663, 657 A.2d 406, 410 (1995). Thus, the two inquiries collapse into one. *See Genetic Implant Sys.*, 123 F.3d at 1458; *Red Wing Shoe Co. v. Hockerson–Halberstadt, Inc.*, 148 F.3d 1355, 1358 (Fed.Cir.1998).

Under the due process clause of the Constitution, Maryland has personal jurisdiction over Mylan if Mylan has sufficient contacts with Maryland to give it "fair warning" that it might be haled into court there. *See Burger King*, 471 U.S. at 472, 474, 105 S.Ct. 2174; *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Mylan has received fair warning if it purposefully availed itself of the benefits and protections of Maryland's laws or purposefully directed its activities at residents of the forum, and if the litigation results from injuries arising out of its activities. *See Burger King*, 471 U.S. at 471–76, 105 S.Ct. 2174; *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). "Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476, 105 S.Ct. 2174 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 320, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Mylan's contacts with Maryland do not suffice to satisfy these Constitutional requirements.

At the outset, Mylan's contacts are not actually with the state of Maryland at all. Rather Mylan's contacts involve the federal government whose office for receipt of ANDAs happens to be within that state. In the same sense, Mylan has not purposefully availed itself of the benefits of the laws of Maryland or purposefully directed its activities at Maryland residents. Mylan seeks benefits only from the federal government through the FDA. Therefore, Mylan has directed its activities at the FDA, not at the state of Maryland or its residents.

This reasoning applies even though Mylan's filing of the ANDA itself constituted the tort of patent infringement under 35 U.S.C. § 271(e)(2) (1994). Section 271(e) was part of the Drug Price Competition and Patent Term Restoration Act of 1984, Pub.L. 98–417, 99 Stat. 1585, designed *inter alia* to compensate for distortions in the patent term resulting from lengthy regulatory approval processes. *See Eli Lilly & Co. v. Medtronic, Inc.*, 496 U.S. 661, 669–71, 110 S.Ct. 2683, 110 L.Ed.2d 605 (1990). Section 271(e)(1) benefits competitors of the patent holder by freeing them from liability for development work reasonably related to securing regulatory approval. By enabling testing to comply with regulatory processes before patent expiration, this section allows competitors to enter the market more quickly after the patent expires, thus limiting what would otherwise amount to an extension of the patent term. *See Glaxo Inc. v. Novopharm Ltd.*, 110 F.3d 1562, 1568, 42 USPQ2d 1257, 1262 (Fed.Cir.1997). Section 271(e)(2), on the other hand, balances the effects of 271(e)(1) to a degree by making it an act of infringement for competitors to file an ANDA if the purpose of the submission is to obtain approval and "engage in the commercial manufacture, use, or sale" of the drug before the expiration of the patent. *See Glaxo*, 110 F.3d at 1568–69. At that point, the patent holder can seek to prevent approval of the ANDA by bringing a patent infringement suit. Such a suit can have the effect of barring

ANDA approval for two and a half years. *See Bristol–Myers Squibb Co. v. Royce Labs., Inc.,* 69 F.3d 1130, 1132, 36 USPQ2d 1641, 1643 (Fed.Cir.1995).

This statutory framework evinces, as the Supreme Court has recognized, that the act of infringement created by section 271(e)(2) is "highly artificial" with a "limited and technical purpose." *Eli Lilly & Co.,* 496 U.S. at 678, 110 S.Ct. 2683. In sum, section 271(e)(2) employs the legal fiction of a defined act of infringement to create case or controversy jurisdiction, thereby enabling a court to promptly resolve any dispute concerning infringement and validity of the subject patent. *See Glaxo,* 110 F.3d at 1569. Section 271(e)(4)(C) recognizes the artificial nature of the filing of an ANDA by limiting monetary relief to unauthorized commercial manufacture, use, offer for sale, or sale of the patented invention.

Manufacture, use, offers for sale, and sales, unlike the filing of an ANDA, are real acts with actual consequences. Such acts fall within our traditional understanding of patent infringement, *see* 35 U.S.C. § 271(a), and subject a defendant to full liability under the law. Commercial manufacture, use, offers for sale, and sales are not legal fictions, but rather are genuine economic acts that, unlike the filing of an ANDA, operate under the commercial laws of a forum state or target its markets and residents. Thus, if Mylan engaged in such acts in Maryland, it might reasonably have foreseen the possibility of being haled into Maryland courts to defend against the consequences of those acts.

The "highly artificial" act of filing an ANDA neither takes advantage of Maryland's commercial laws and legal structures nor targets Maryland's markets and residents. Indeed, the mere filing of an ANDA does not at that point even cause a tangible injury to the patent holder. Accordingly, I believe that Mylan's filing of an ANDA did not fairly warn of the possibility of implicit submission to Maryland courts. Mylan's contacts with Maryland, then, are insufficient to establish personal jurisdiction.

Finally, although the above suffices to end the Constitutional inquiry, I note further that the exercise of personal jurisdiction over Mylan also would not comport with "traditional notions of fair play and substantial justice." Mylan's filing of papers with a federal agency that happens to reside in Maryland does not qualify as significant contacts with that state at all. This situation is one in which "the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1568, 30 USPQ2d 1001, 1009 (Fed.Cir.1994). Maryland has no interest in hearing this case. It has none of its laws to protect, enforce, interpret, or apply. The only laws at issue are federal laws. Nor does Zeneca have any compelling interest. Zeneca is incorporated under the laws of England with its principal place of business in England. It has identified no additional burden it would encounter by litigating in Pennsylvania, where Mylan's parent has a place of business, rather than in Maryland.

In sum, because Mylan's contacts with Maryland are Constitutionally deficient, Maryland cannot exercise personal jurisdiction over Mylan. I therefore agree that this court should reverse the transfer order of the Pennsylvania district court and remand. Because this court can reach that conclusion under a traditional due process analysis, I believe it need not adopt the "government contacts exception" as the law of this circuit.