**MONSTER CABLE PRODUCTS, INC., Plaintiff,**

v.

**EUROFLEX S.R.L., et al., Defendants.**

**No. C 08–3338 PJH.**

United States District Court, N.D. California.

July 10, 2009.

Christopher James Passarelli, Robert W. Payne, Lariviere, Grubman & Payne, LLP, Monterey, CA, for Plaintiff.

L. Michael Rudolph, L. Michael Rudolph, PC, New York, NY, James R. Batchelder, Renee DuBord Brown, Howrey LLP, Cupertino, CA, for Defendants.

## ORDER DENYING MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FOR FAILURE TO STATE A CLAIM; GRANTING MOTION FOR MORE DEFINITE STATEMENT; GRANTING MOTION TO DISMISS COUNT VII FOR LACK OF SUBJECT MATTER JURISDICTION

PHYLLIS J. HAMILTON, District Judge.

Defendants' motions to dismiss came on for hearing on July 1, 2009, before this court. Plaintiff appeared by its counsel Robert Payne, and defendants appeared by their counsel Renee DuBord Brown and Michael Rudolph. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby rules as follows and for the reasons stated at the hearing.

### BACKGROUND

Plaintiff Monster Cable Products, Inc. ("MCP") is a California corporation headquartered in Brisbane, California. MCP has been using the mark "MONSTER" continuously since August 18, 1978. MCP initially used "MONSTER" and related marks for electrical, audio, video, clothing, and musical items. It subsequently used the marks for computer products and services, internet and electronic commerce, professional sports events, sporting goods, community events, grammy award-winning music production and entertainment, television entertainment and merchandising, and computer, electronic, and industrial cleaning products.

MCP first used "MONSTER" in connection with cleaning preparations and solutions and air spray cans on November 8, 2008. Beginning that same date, MCP used "MONSTER SCREENCLEAN" for electronic equipment cleaning solutions and preparations. In August 2003, MCP first used "MONSTER iCLEAN" in connection with cleaning solutions and cloths. MCP owns over 100 federal registrations and has over 30 pending applications for "MONSTER" and derivative marks.

Defendant EuroFlex S.R.L., Italy ("EFI") is an Italian corporation that manufactures household cleaning appliances (steam cleaners, vacuum cleaners, steam irons) in Europe and China under the "monster Household Appliances" name. It markets and advertises the products exclusively in Europe. EFI sold its products directly to QVC in 2004/2005, but does not currently sell its products to any U.S. retailers. EFI operates a website located at www.euroflex.tv, which also advertises its products. The website does not allow direct orders by consumers.

Homeit LLC is a Delaware limited liability company. It does business as defendant EuroFlex Americas, Inc. ("EFA"), which has offices in New York. EFA advertises, markets, and distributes household cleaning appliances in the United States and Canada. EFA orders merchandise from EFI to maintain inventory and to fill purchase orders from U.S. customers. The Chinese manufacturer of EFI products ships those products directly to EFA via ports in California, Virginia, and South Carolina. EFA maintains the websites www.monster1200.com and www. euroflexusa.com, both of which allow for

direct ordering. EFA has advertised and sold products to California and U.S. residents.

EFA is not an affiliate or subsidiary of EFI, nor was it created by EFI. The two companies are separate legal entities with separate corporate books and records. EFI does not direct EFA's day-to-day marketing, advertising, or sales activities. Nevertheless, the two companies are related in one regard—Andrea Milanese, chief executive officer ("CEO") of EFI, also serves as EFA's CEO.

EFI filed a trademark application with the Patent and Trademark Office ("PTO") for the mark "MONSTER" on June 9, 2003, for use in connection with multipurpose steam cleaners for domestic use. MCP filed a notice of opposition to this application on June 24, 2004, which was dismissed. MCP's appeal is currently pending. EFI also maintains applications with the PTO filed since September 6, 2008, for the marks "EUROFLEX MONSTER OF ITALY" (with design), "MONSTER EUROFLEX OF ITALY" (with design), and "EUROFLEX MONSTER OF ITALY" (with design). MCP has filed an opposition to each of these applications with the Trademark Trial and Appeal Board ("TTAB").

Defendants EFA and EFI now move for (1) dismissal of EFI from the case for lack of personal jurisdiction under Rule 12(b)(2), (2) dismissal of counts I–VI of the amended complaint for failure to state a claim under Rule 12(b)(6), (3) a more definite statement of counts I–VI of the amended complaint under Rule 12(e), and (4) dismissal of count VII of the amended complaint for lack of personal jurisdiction over EFI under Rule 12(b)(2), or for plaintiff's failure to allege a true case or controversy under Rule 12(b)(1).

## DISCUSSION

### I. Motion To Dismiss Defendant EFI for Lack of Personal Jurisdiction

Defendants argue that EFI must be dismissed from this action pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. EFI contends that it lacks sufficient contacts with California and the United States to warrant this court's exercise of jurisdiction over it under either the state long-arm statute or Federal Rule of Civil Procedure 4(k)(2).

#### A. Legal Standard

When a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is proper. *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir.2002). Where the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir.2004). In such cases, the court need only inquire into whether the plaintiff's pleadings and affidavits make a prima facie showing of personal jurisdiction. *Id.* Although the plaintiff cannot rest on the bare allegations of the complaint, uncontroverted allegations in the complaint must be taken as true. *Id.* Conflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor. *Id.*

California's long-arm statute authorizes the exercise of personal jurisdiction on any basis not inconsistent with the state or federal constitution. Cal.Code Civ. Proc. § 410.10. To comport with due process, the court must consider whether EFI has sufficient "minimum contacts" with California, such that the exercise of personal jurisdiction "does not offend tra-

ditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Under the minimum-contacts test, the forum contacts of each defendant are assessed individually. *Calder v. Jones,* 465 U.S. 783, 790, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). Because it is undisputed that EFA is subject to personal jurisdiction due to its sales and marketing in California, the personal jurisdiction analysis focuses on EFI's forum contacts.

■■■ Personal jurisdiction over a non-resident of the forum state can be either "general" or "specific." If a defendant is domiciled in the forum state, or if its activities there are "substantial, continuous, and systematic," a federal court when permitted by the state's long-arm statute may exercise general jurisdiction as to any cause of action, even if unrelated to the defendant's activities within the state. *See Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437, 445, 446, 72 S.Ct. 413, 96 L.Ed. 485 (1952). Here, MCP does not contend that the court has general jurisdiction over EFI.

■■■ If a non-resident's contacts with the forum state are not sufficiently "continuous and systematic" for general jurisdiction, that defendant may still be subject to specific jurisdiction on claims related to its activities or contacts in the forum. *See Tuazon v. R.J. Reynolds Tobacco Co.,* 433 F.3d 1163, 1169 (9th Cir.2006). A plaintiff may assert specific jurisdiction over a defendant where (1) the defendant has purposefully availed himself of the benefits and protections of the forum state, (2) the claim arose directly out of defendant's contacts with the forum state, and (3) the exercise of jurisdiction is fair and reasonable. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477–78, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Schwarzenegger,* 374 F.3d at 802.

■■■ The first requirement of the minimum-contacts test has two aspects. The defendant must have either (1) purposefully directed its activities at residents of the forum, or (2) purposely availed itself of the privilege of conducting activities within the forum. *Hanson v. Denckla,* 357 U.S. 235, 253–54, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *see Schwarzenegger,* 374 F.3d at 802. The purposeful direction prong is analyzed in intentional tort cases. *Holland Am. Line Inc. v. Wartsila N. Am., Inc.,* 485 F.3d 450 (9th Cir.2007). Courts generally apply the purposeful availment prong when the defendant invokes the benefits and protections of the laws in the forum, such as in contract cases. *Schwarzenegger,* 374 F.3d at 802–03.

■■■ The three minimum contact requirements protect non-residents from being sued in foreign courts as a result of random, fortuitous, or attenuated contacts over which they have no control. *Burger King,* 471 U.S. at 475, 105 S.Ct. 2174. All three requirements must be met to ensure due process of law for the defendants. *See Pebble Beach Co. v. Caddy,* 453 F.3d 1151, 1155 (9th Cir.2006). In addition, courts including the Ninth Circuit have adopted a "flexible approach" that may allow personal jurisdiction with a lesser showing of minimum contacts where dictated by considerations of reasonableness. *See Ochoa v. J.B. Martin and Sons Farms, Inc.,* 287 F.3d 1182, 1188 n. 2 (9th Cir.2002).

B. Specific Jurisdiction in California

In its amended complaint, MCP alleges that EFI is subject to the court's jurisdiction based on EFI's purposeful advertising in California and EFI's purposeful placement of products in the stream of commerce. MCP also asserts that EFA's actions impute EFI because EFA is EFI's agent, EFA acts as EFI's licensee, and EFI and EFA are related companies.

Defendants claim that MCP has failed to identify any specific advertisements that EFI purposefully directed to California. Defendants acknowledge the companies are related in so far as Andrea Milanese serves as CEO of both EFI and EFA, but contend that EFI is not subject to personal jurisdiction under theories of agency, stream of commerce, licensing, or related companies.

■■■ The facts do not support finding the level of day-to-day control required to either hold a licensor liable or to apply the agency exception, nor do they indicate that EFI is subject to personal jurisdiction under a stream of commerce theory. The related-companies doctrine adds nothing to the courts personal jurisdiction analysis. For these reasons and those stated at the hearing, the court is unpersuaded that EFI has direct contacts sufficient to subject it to specific jurisdiction under California's long-arm statute.

### C. National Contacts Jurisdiction/Federal Long-arm Statute

■■■ Pursuant to Federal Rule of Civil Procedure 4(k)(2), known as the federal long-arm statute, a plaintiff can establish jurisdiction over a defendant based on the aggregate contacts of the defendant with the United States as a whole. *Pebble Beach*, 453 F.3d at 1159. To do so, the plaintiff must prove three factors. "First, the claim against the defendant must arise under federal law. Second, the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction. Third, the federal court's exercise of personal jurisdiction must comport with due process." *Id.* (internal citations omitted).

■■■ Here, the first factor is met because plaintiff claims trademark infringement under 15 U.S.C. § 1125(a). The second factor is met if the defendant does not identify another state court in which the suit could proceed. *Holland,* 485 F.3d at 461. The plaintiff is not required to prove lack of jurisdiction in every state. *Id.* Defendants in this case have not conceded to jurisdiction in another state, so the second factor is satisfied. The third factor's due process analysis is identical to the analysis for the forum state except the relevant forum is the United States as a whole. *Pebble Beach,* 453 F.3d at 1159. The court thus again turns to purposeful direction or availment, dual prongs of the first requirement of the minimum-contacts test.

MCP claims that EFI falls under the specific personal jurisdiction of this court based on its direct contacts with the nation as a whole largely for the same reasons considered by the court in its California jurisdictional analysis. The few additional reasons MCP provides do not persuade the court that EFI purposefully directed products to the United States.

MCP also contends that EFI's actions satisfy the purposeful availment prong for specific jurisdiction under the federal long-arm statute. In particular, EFI filed an "intent to use" application with the PTO for the mark "MONSTER."

■■■ A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there. *Schwarzenegger,* 374 F.3d at 802. In this way, the defendant purposely avails himself of "the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws." *Hanson,* 357 U.S. at 253, 78 S.Ct. 1228. In exchange for the forum state's benefits and protections, the defendant must submit to the burden of litigation in the forum state. *Burger King,* 471 U.S. at 476, 105 S.Ct. 2174. Here, the "forum state" is the coun-

try as a whole under the federal long-arm statute.

■ MCP argues that EFI's application illustrates an intent to sell goods in the United States. Defendants respond that under 15 U.S.C. § 1071(b), jurisdiction over trademark appeals resides with the United States District Court for the District of Columbia ("D.C. district court"). Additionally, defendants claim that under *Zeneca Ltd. v. Mylan Pharm., Inc.*, 173 F.3d 829 (Fed.Cir.1999), the government contacts exception should apply to EFI's application to the PTO.

Section 1071(b) states that the D.C. district court has jurisdiction over civil actions involving an adverse party residing in a foreign country initiated after issuance of an unsatisfactory decision by the PTO director or the TTAB. Here, because defendants have not indicated that they would actually be subject to jurisdiction in the District of Columbia, this aspect of defendant's argument does not defeat jurisdiction under the federal long-arm statute. *See Holland,* 485 F.3d at 461.

*Zeneca* involved a claim by a British corporation against a West Virginia corporation. *See Zeneca,* 173 F.3d at 830. The Federal Circuit found that the defendant was not subject to jurisdiction in Maryland based on its petition to the Food and Drug Administration in that state. *Id.* at 832. Applying the government contacts exception, the court held that petitioning the national government does not qualify as a contact in the personal jurisdiction analysis. *Id.* at 831.

The government contacts exception was originally crafted to preserve First Amendment rights associated with public participation in the federal government and to prevent the creation of national supercourts in the District of Columbia. *Id.* (citing *Envtl. Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.,* 355 A.2d 808, 813 (D.C.1976) (adopting the govern-

mental contacts exception in the District of Columbia)). It also implicates due process. *Id.* In *U.S. Indus., Inc. v. Maclaren,* No. 75–2086, 1976 WL 21010, at *4, 1976 U.S. Dist LEXIS 15331, at *11 (D.D.C. Apr. 29, 1976), the D.C. district court applied the government contacts exception to deny jurisdiction over a British citizen who had applied to the PTO.

Following a change in the District of Columbia's long-arm statute, the D.C. Court of Appeals in *Rose v. Silver,* 394 A.2d 1368, 1374 (D.C.1978), concluded that "the First Amendment provides the only principled basis for exempting a foreign defendant from suit. . . ." Courts in the D.C. circuit subsequently questioned whether jurisdiction could be asserted when a defendant's contacts did not involve First Amendment concerns. *See, e.g., Naartex Consulting Corp. v. Watt,* 722 F.2d 779, 788–87 (D.C.Cir.1983) (declining to resolve the issue because the domestic defendant's activities implicated the right to petition); *see also Am. Standard, Inc. v. Sanitary Wares Mfg. Corp.,* No. 86–1997, 1987 WL 19224, at *3, 1987 U.S. Dist. LEXIS 14924, at *10 (D.D.C. June 30, 1987) (applying the government contacts exception to a foreign defendant that filed an application with the PTO). Here, First Amendment concerns are not implicated in the context of the foreign defendant EFI. *See Envtl. Research,* 355 A.2d at 813 (recognizing that the right to petition applies to the "national citizenry").

■ The federal long-arm statute requires simply that jurisdiction comport with due process. *Pebble Beach,* 453 F.3d at 1159. At its base, due process seeks to ensure that a defendant is not haled into court for contacts that are random, fortuitous, or attenuated. *Burger King,* 471 U.S. at 475, 105 S.Ct. 2174. It places responsibility on defendant's own actions that create a substantial connection with

the forum. *Id.* The Ninth Circuit's flexible approach allows for a lesser showing of contacts if considerations of reasonableness are met. *Ochoa,* 287 F.3d at 1188 n. 2.

Here, EFI's June 2003 application to the PTO to gain trademark protection in the United States for its "MONSTER" mark constitutes a substantial contact. EFI would be able to sue for protection against allegedly infringing marks based on its trademark registration. The privilege of trademark registration invokes the benefits and protections of trademark law. It is reasonable and does not offend "traditional notions of fair play and substantial justice," *Int'l Shoe,* 326 U.S. at 316, 66 S.Ct. 154, to require EFI to submit to the burden of litigation. For these reasons, the court refuses to extend the government contacts exception to the facts of this case where jurisdiction over EFI otherwise comports with due process.

The court finds that EFI is subject to personal jurisdiction based on its June 2003 application to the PTO. Because EFI is subject to jurisdiction under Rule 4(k)(2), MCP's request for jurisdictional discovery is denied as moot.

## II. Motion to Dismiss and/or Motion for a More Definite Statement

MCP lists three trademarks to which it claims to have acquired prior rights through use in commerce, namely "MONSTER," "MONSTER SCREENCLEAN," and "MONSTER iCLEAN." MCP alleges that defendants have infringed its registered and unregistered marks, which constitutes sufficient notice under Rule 12(b)(6).

Defendants argue that counts I–VI of MCP's amended complaint should be dismissed for failure to state a claim and alternatively move for a more definite statement. Defendants contend that MCP failed to identify the specific trademarks that are at issue.

For the reasons stated at the hearing, the court denies defendants' Rule 12(b)(6) motion to dismiss but orders MCP to provide a more definite statement within 14 days of the hearing date identifying each of its marks, whether registered or unregistered, that have allegedly been infringed. The statement shall be verified and will bind MCP as would an amended pleading.

## III. Motion to Dismiss Count VII for Lack of Jurisdiction

Defendants argue that count VII of MCP's amended complaint requesting declaratory relief regarding EFI's three pending applications for trademark registration should be dismissed. Defendants contend their Rule 12(b)(2) motion should be granted because the applicant is EFI, over whom the court lacks personal jurisdiction. This argument fails because the court has personal jurisdiction over EFI under Rule 4(k)(2) for the reasons discussed above.

Defendants also argue that the claim fails to rise to the level of threat required by *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007), and that the court should dismiss the claim for lack of subject matter jurisdiction. The analysis thus turns to whether there is an actual case or controversy sufficient to find subject matter jurisdiction over EFI.

The Declaratory Judgment Act ("DJA") authorizes the court to "declare the rights and other legal relations of any interested party seeking such declaration" when there is an "actual controversy." 28 U.S.C. § 2201(a). Under Ninth Circuit trademark law, to satisfy the actual controversy requirement, the plaintiff must show "real and reasonable apprehension" that it would be liable for infringement if it con-

tinued marketing its product. *Chesebrough–Pond's, Inc. v. Faberge, Inc.*, 666 F.2d 393, 396 (9th Cir.1982) (citing *Societe de Conditionnement en Aluminium v. Hunter Eng'g, Inc.*, 655 F.2d 938 (9th Cir. 1981)); *see also Rhoades v. Avon Prods. Inc.*, 504 F.3d 1151, 1157 (9th Cir.2007) (treating the controversy analysis similarly for patents and trademarks).

In *MedImmune*, a patent licensing dispute, the Supreme Court stated that the actual controversy requirement of the DJA demands only

> that the dispute be definite and concrete, touching the legal relations of parties having adverse legal interests; and that it be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.... The question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*MedImmune*, 549 U.S. at 127, 127 S.Ct. 764 (citations and quotations omitted).

In response to *MedImmune*, the Federal Circuit dropped its discredited "reasonable apprehension of imminent suit" test and has adopted in its place the "all circumstances" test. Under this new approach, a declaratory judgment plaintiff is required only to satisfy Article III, which includes standing and ripeness, by showing under "all the circumstances" an actual or imminent injury caused by the defendant that can be redressed by judicial relief and that is of "sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*, 482 F.3d 1330, 1338 (Fed.Cir.2007) (quoting

*MedImmune*, 549 U.S. at 127, 127 S.Ct. 764).

MCP argues that declaratory relief is appropriate where there are proceedings pending before the TTAB and actual litigation or its threat of litigation, citing *Chesebrough*, 666 F.2d at 396, 397; *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1247 (10th Cir.2008); and *Jeffrey Banks, Ltd. v. Jos. A. Bank Clothiers, Inc.*, 619 F.Supp. 998, 1002 (D.Md.1985). Defendants contend that in all of these cases the plaintiff had been threatened to some extent by the defendant.

Prior to *MedImmune*, the Ninth Circuit in *Chesebrough*, 666 F.2d at 396, held that the plaintiff had a "real and reasonable apprehension" that the defendant would sue it for trademark infringement. The defendant had sent the plaintiff a letter that laid out a prima facie case of infringement. *Chesebrough*, 666 F.2d at 396. In *Jeffrey Banks*, 619 F.Supp. at 1002, the court similarly noted that the defendant had sent a letter to the plaintiff alerting it that use of the mark at issue violated section 1125(a).

In *Surefoot*, the only post-*MedImmune* case cited by the parties, the court stated that a TTAB opposition filing is not conclusive evidence of an actual infringement dispute. *Surefoot*, 531 F.3d at 1246. In addition to five TTAB oppositions, however, the defendant had repeatedly claimed that the plaintiff had engaged in infringing activity. *Id.* Such evidence indicated an underlying infringement dispute sufficient to give the court jurisdiction. *Id.* at 1247.

Here, MCP states in its complaint only that there is an "actual, substantial, and justiciable controversy" between the parties. Unlike in the cases it cites, MCP has not alleged any facts that would indicate that this is a "real and substantial" dispute. *See MedImmune*, 549 U.S. at 127, 127 S.Ct. 764. Additionally, the

marks that EFI seeks to register all involve the combination of a design with some variation of the words "MONSTER," "EUROFLEX," and "ITALY." At the hearing MCP conceded that it does not anticipate a suit from EFI. These factors support the court's finding that "under all the circumstances," there is no substantial controversy. *Id.* Because a grant of declaratory relief falls within its discretion, the court grants defendants' Rule 12(b)(1) motion to dismiss count VII.

## CONCLUSION

For the foregoing reasons and those stated at the July 1, 2009, hearing, the court: (1) DENIES defendants' Rule 12(b)(2) motion to dismiss EFI for lack of personal jurisdiction; (2) DENIES defendants' Rule 12(b)(6) motion to dismiss counts I–VI of the amended complaint for failure to state a claim upon which relief can be granted; (3) GRANTS defendants' Rule 12(e) motion for a more definite statement; (4) DENIES defendants' Rule 12(b)(2) motion to dismiss count VII of the amended complaint; and (5) GRANTS within its discretion defendants' Rule 12(b)(1) motion to dismiss count VII of the amended complaint.

**IT IS SO ORDERED.**